**Jorge PÉREZ CORDERO Plaintiff,**

v.

**WAL–MART PR, INC. et al. Defendants.**

**No. CIV. 01–2383(PG).**

United States District Court, D. Puerto Rico.

Nov. 18, 2002.

As Amended Dec. 9, 2002.

Wilma E. Reveron–Collazo, San Juan, PR, for plaintiff.

Kenneth C. Suria–Rivera, San Juan, PR, for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the court is "Defendants' Motion to Dismiss Amended Complaint and Memorandum of Law in Support Thereof"[1] ("Motion to Dismiss")(Docket No. 5), Plaintiff's "Motion in Opposition" ("Plaintiff's Opposition")(Docket No. 11), and "Defendants' Reply in Compliance with Order" (Docket No. 18)(See Docket No. 15).

## BACKGROUND

Plaintiff, Jorge Pérez–Cordero ("Pérez–Cordero" or "Plaintiff"), has been employed since 1998 as a butcher at the Sam's Club store in Humacao, Puerto Rico which is owned and operated by Wal–Mart Puerto Rico, Inc. ("Wal–Mart"). His immediate supervisor from 1998 until February 2001 was Madeleine Santiago ("Santiago"), whom Pérez–Cordero alleges harassed him because of his gender. Pérez–Cordero claims that he was discriminated against by Santiago when she: 1) called him to appraise him, 2) admonished him in front of others, 3) grabbed and hugged him and forcefully sucked his neck in front of an associate, 4) undertook a campaign of hostility and humiliations against him in front of other employees making sexually related remarks, and 5) started assigning him the toughest and most demeaning chores of the meat center. Pl.'s Compl. at p. 4. Pérez–Cordero also had other supervisors, such as Pedro Falcón ("Falcón"), to whom he complained about the alleged sexual harassment. He alleges that once he complained about the harassment to several supervisors, all of them but specifically Falcón, retaliated against him by: 1) denying him participation in training sessions, 2) referring to him as a "problematic employee," 3) denying him vacations, and 4) advising him that it would be easier to find a butcher [to replace him] than a team leader [to replace Santiago]. Pl.'s Compl. at pp. 5–6.

Pérez–Cordero brings suit against his employer Wal–Mart, and also individually against Santiago and Falcón, under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. ("Title VII") and Puerto Rico Law 100, 29 P.R. LAWS ANN. § 146 et seq. ("Law 100"). Pérez–Cordero filed a charge of discrimination with the Antidiscrimination Unit of the Department of Labor of the Commonwealth of Puerto Rico ("ADU") on October 3, 2000. On May 10, 2001, the ADU re-

---

1. In his opposition papers, Plaintiff correctly points out that because he has not amended the Complaint, Defendants must have inadvertently referred to an amended version of it in the title of their motion.

ceived a request from Plaintiff asking the agency for permission to file a civil lawsuit ("permiso para litigar"). The ADU replied on June 7, 2001 by sending Plaintiff a letter informing him that they were granting his petition. Plaintiff also received a notice of right-to-sue from the Equal Employment Opportunity Commission ("EEOC") on July 25, 2001. Pérez–Cordero then filed his complaint on October 16, 2001 alleging that Defendants engaged in conduct that 1) constituted sex discrimination and sexual harassment because of his gender and 2) was in retaliation for his protected activity. Pérez–Cordero also attempts to make a claim against Defendants for deprivation of his Constitutional right to equal protection of the laws. However, since he fails to address or establish any facts and/or legal foundation in support of this Constitutional claim, this Court is unable to render a decision on it and thus must DISMISS that claim as to all Defendants.

Defendants' Motion to Dismiss, premised on Rules 12(b)(4), (5), and (6), generally alleges that the Court does not possess subject matter jurisdiction in this action and that Plaintiff failed to state a claim for which relief can be granted. Defendants maintain 12(b)(4) and 12(b)(5) defenses, which allow parties to file motions asserting the defenses of insufficiency of process (4) and insufficiency of service of process (5). Fed.R.Civ.P. 12(b)(4) and 12(b)(5). However, Defendants state no grounds for these assertions and neither do we find separate basis for such defenses in any of the pleadings or motion papers. Therefore, Defendants' request for dismissal on the basis of those two defenses fails. In support of their 12(b)(6) defense, Defendants explain that because the individual defendants cannot be sued under Title VII, the Court does not have subject matter jurisdiction over Plaintiff's claims. Additionally, they argue that Plaintiff's causes of action are time-barred for failure to file this lawsuit within 90 days of receipt of his right-to-sue letter from the ADU, the local administrative agency in Puerto Rico that reviews employment discrimination charges. Def.'s Mot. to Dismiss at 2.

Plaintiff's Opposition states that Defendants' Motion to Dismiss should be denied because discovery has not yet concluded, no answer to the complaint has been filed, and the Motion to Dismiss fails to meet the 12(b)(6) standard. Pl.'s Opp'n at 3. Plaintiff's suggestions that the Motion to Dismiss must be denied because discovery has not concluded and because Defendant has not yet filed an answer are erroneous. Federal Rule of Civil Procedure 12(b) states that: "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted." Clearly, a motion to dismiss can be filed before discovery has been completed and before an answer has been filed.

### STANDARD FOR A MOTION TO DISMISS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in Plaintiff's favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, supra, at 3. Moreover, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). Specifically, the

inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim...." *Id.*; *see also Doyle, supra,* at 190. In *Rogan v. Menino,* 175 F.3d 75 (1st Cir.1999), the Court held that a dismissal for failure to state a claim can only be upheld if, after giving credence to all well pleaded facts and making all reasonable inferences in the plaintiff's favor, the factual averments do not justify recovery on some theory asserted in the complaint. With this standard in mind, we move to the analysis of the pending dispositive motion.

## DISCUSSION

### Individual Liability

■ We turn first to examine the issue of whether or not Title VII imposes individual liability on supervisors or co-employees accused of engaging in discriminatory conduct. Even though the issue of individual liability has been widely examined, the First Circuit has not yet taken a position on it. *See Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931 (1st Cir.1995)(declining to address the issue of individual liability); *but see Haynes v. Williams,* 88 F.3d 898 (10th Cir.1996) (no individual liability under Title VII); *Williams v. Banning,* 72 F.3d 552 (7th Cir.1995) (same); *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995) (same); *Gary v. Long,* 59 F.3d 1391 (D.C.Cir.1995) (same); *Lenhardt v. Basic Institute of Technology, Inc.,* 55 F.3d 377 (8th Cir.1995) (same); *Smith v. Lomax,* 45 F.3d 402 (11th Cir. 1995) (same); *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994) (same); *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993) (same). Nevertheless, like in the majority of the Circuits it has been established in this District that Title

VII liability does not extend to individual employees of the employer entity regardless of whether or not they hold supervisory positions. *Matos Ortiz v. Commonwealth Of Puerto Rico,* 103 F.Supp.2d 59, 61 (D.P.R.2000). Therefore, Pérez–Cordero's Title VII claims against Santiago and Falcón fail and must be **DISMISSED WITH PREJUDICE**. There remains against these two individual Defendants the local claims pursuant to Law 100. *See Arroyo Rodríguez v. Econo Supermarket, Inc.,* 204 F.Supp.2d 289, 293–95 (D.P.R.2002)(supervisors can be held individually liable under the local anti-discrimination laws in Puerto Rico).

### Claims Against Wal-mart

The pending federal claims in this case are those against Defendant Wal–Mart which we now review.[2] Defendant's central argument in support of its request for dismissal against Wal–Mart is that Plaintiff had to file his lawsuit within 90 days after receipt of the [right-to-sue] letter from the ADU, not within 90 days of receipt of the EEOC letter. Because Plaintiff failed to do so, Defendant argues, his claims are time-barred. Defendant supports its argument by maintaining that in several cases this Court has referred to an ADU right-to-sue letter in ways that suggest it is sufficient to trigger the 90–day period. *See Cuello Suárez v. Puerto Rico Electric Power Authority,* 798 F.Supp. 876, 880 (D.P.R.1992) ("The Anti–Discrimination Unit issued a right-to-sue letter on December 29, 1987, ... [o]n January 26, 1988, plaintiffs filed with this Court the allegations which form the core of this action."); *Calderón–Trujillo v. Ready Mix Concrete, Inc.,* 635 F.Supp. 95, 96 (D.P.R. 1986)("On September 6, 1983, the Antidiscrimination Unit of the Department of La-

---

**2.** Since Plaintiff's federal claims are now only pending against co-defendant Wal-mart, we

refer to a single Defendant making the time-barredness arguments in favor of dismissal.

bor and Human Resources issued a 'right-to-sue' letter."). An additional case Defendant cites both in its Motion to Dismiss and in its reply, *Pol–Sella v. SER Jobs for Progress Nat., Inc.*, 11 F.Supp.2d 170, 173–74 (D.P.R.1998), is absolutely impertinent since the claim in that case was under 42 U.S.C. § 1983 and there is no exhaustion of administrative remedies requirement under that statute.

Defendant requested leave to file a reply to Plaintiff's opposition to their motion to dismiss and in granting its request, the Court asked Defendant to address the issue of why should the ADU letter as opposed to only the one from the EEOC, suffice to trigger the 90–day period. (Docket No. 15). In its Reply, Defendant refers once again to the above mentioned decisions of this Court, and also argues that if we were to find that the ADU letter did not trigger the 90–day period, and only the EEOC letter did, complainants in Plaintiff's position would benefit from a windfall of additional time once they received the ADU letter and awaited receipt of a letter from the EEOC. (*See* Docket No. 18 at ¶ 8). Plaintiff's opposition papers are absolutely non-responsive to the arguments Defendant makes in favor of dismissal and as such, we do not entertain the discussion made therein.[3]

To launch our inquiry into this issue we review the procedural history of this case beginning with its administrative phase. First, on May 10, 2001 while the ADU was in the process of reviewing his charge of discrimination Plaintiff asked that agency for permission to file a civil suit. Arguably, this measure is equivalent to requesting a notice of right-to-sue from the EEOC. Then on June 7, 2001 the ADU wrote Plaintiff a letter explaining it was granting his request and dismissing the charge. On July 25, 2001 the EEOC issued Pérez–Cordero right-to-sue letter and he filed his complaint in this Court on October 16, 2001.

Under 42 U.S.C.2000e–5(f)(1), a civil action must be commenced within ninety days after the charging party has received a "right-to-sue" letter from "the Commission." The relevant section of the statute states that: "[i]f a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission ... the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ...." *Id.; see also Edwards v. Occidental Chem. Corp.,* 892 F.2d 1442, 1445 (9th Cir.1990). It is clear from the language of the statute that when the right-to-sue letter is issued, the 90–day period is automatically triggered. It is less clear however, whether the letter must necessarily come from "the Commission," that is the EEOC, or whether an equivalent letter from a state or local agency will be sufficient to trigger that period.

▪ Thus, the issue presented in this case is the following: Should the June 7,

---

**3.** Because our decision in this Opinion and Order maintains Plaintiff's claims alive, we take this opportunity to forewarn Plaintiff that in the future the Court expects a showing of greater effort put into this case on behalf of Plaintiff and Plaintiff's counsel. His opposition papers completely fail to grasp and/or address the issues put forth by Defendant. It goes well beyond this Court's responsibilities to do the work of the parties' attorneys spe-cially when what they present to the court seems effortless, and even when the deficiency is due to an attorney's lack of understanding of the applicable law. *See Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, n. 3 (1st Cir. 2000) (stating that when a litigant has failed to raise a legal argument, "we think neither [the district nor the circuit] court is obliged to dream up and articulate [litigant's] arguments for them.")

2001 letter received from the Antidiscrimination Unit of the Department of Labor of Puerto Rico, as opposed to the July 25, 2001 notice received from the EEOC, suffice to trigger the ninety (90) day period to file a civil action in federal court under Title VII? We find that it does not. A careful review of the administrative proceedings that take place in these type of cases along with the applicable law leads to the conclusion that the 90–day period began to run only after receipt of the right-to-sue letter from the EEOC, which was issued on July 25, 2001. Therefore, Plaintiff timely filed his civil action in federal court on October 16, 2001 and Defendant's motion to dismiss against Wal-mart must be **DENIED**.

### Procedural Framework Under Federal and State Law

In order to understand why it seems there were two right-to-sue letters issued in this case, we begin by distinguishing the administrative framework and time limits imposed by the ADU for local or state proceedings and those imposed by the U.S. Congress and the EEOC for federal proceedings. Before filing a lawsuit alleging sexual harassment in violation of Title VII, and regardless of whether or not there are supplemental claims pursuant to local antidiscrimination laws, a claimant must exhaust administrative remedies. 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a); *see also Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir.1999); *Chico–*

*Velez v. Roche Products, Inc.*, 139 F.3d 56 (1st Cir.1998). In "deferral states," or states with a certified Fair Employment Practice Agency ("FEPA"), this process begins when a claimant files a charge of discrimination with either the state FEPA, in this case the ADU, or with the EEOC. (*See EEOC Procedural Regulations*, 29 C.F.R. § 1601.3(a), § 1601.70, § 1601.71, § 1601.74, § 1601.75 (2000)). Puerto Rico is a deferral state jurisdiction with the ADU as its designated FEPA. *See* 29 C.F.R. § 1601.80; *see also American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111, 122 (1st Cir.1998); *Silva v. Universidad de Puerto Rico*, 817 F.Supp. 1000, 1003 (D.P.R.1993). *Calderón–Trujillo v. Ready Mix Concrete*, 635 F.Supp. 95, 98 (D.P.R.1986).[4] The charge must be filed within three hundred (300) days of the last incident of discrimination.

But in a deferral state, the FEPA has exclusive jurisdiction over discrimination claims for a period of sixty (60) days unless the state agency disposes of the complaint beforehand. *See* 42 U.S.C. § 2000e–5(d). A charge brought to the EEOC may not be considered filed for purposes of the 300–day limit until the state agency has terminated its proceedings or until 60 days elapse after proceedings have commenced in the state agency, whichever occurs first. *Cajigas v. Banco de Ponce*, 741 F.2d 464, 467 n. 8 (1st Cir.1984) (*citing Mohasco Corp. v. Silver*, 447 U.S. 807, 817, 100 S.Ct. 2486, 65

---

**4.** The Procedural Regulations of the Equal Employment Opportunity Commission, 29 C.F.R. § 1601 (2001), states that "[t]he Commonwealth of Puerto Rico Department of Labor has been designated as a FEP agency for all charges except... (4) all charges alleging violations of section 704(a) or Title VII." 29 C.F.R. § 1601.74 n. 5. It is this Court's understanding that this must be a typing error and that this last provision should read *(4) all charges alleging violations of section 704(a) of*

*Title VII*. Section 704(a) of the statute prohibits discriminatory conduct that retaliates against an employee for opposing unlawful employment or for his participation in a discrimination investigation. We find that because it has been decided in this Court on numerous occasions that Puerto Rico is a deferral state with a designated fair employment practices agency for the purposes of claims under Title VII, it is not necessary to ponder any further on this matter.

L.Ed.2d 532 (1980)). Thus, a complainant alleging violations of both federal and state laws must file the administrative charge with the state agency within 240 days to ensure timely filing with the EEOC and comply with the federal requirement of exhaustion of administrative remedies.

After a charge has been filed with the EEOC within the time limits set out above, there are two instances when a right-to-sue letter can be issued: first when, during the administrative investigation, a person claiming to be aggrieved requests in writing that a notice of right-to-sue be issued; and second, when issuance of the right-to-sue follows after the Commission's disposition of a charge. 29 C.F.R. § 1601.28(a)-(b); 42 U.S.C. § 2000e-5(d) and § 2000e-5(f)(1). For a notice to be issued upon a claimant's request, more than one hundred and eighty (180) days after the filing of the charge must have elapsed. 29 C.F.R. § 1601.28(a). Otherwise, for issuance prior to the expiration of the one hundred and eighty (180) days, the Commission must have determined that it is probable it would have been unable to complete the investigation before the expiration of that time period. *Id.* Only upon issuance of a right-to-sue notice will a claimant be deemed to have exhausted administrative remedies in order to be able to file a civil action, and this he may do within ninety days of receipt of such notice. 42 U.S.C. § 2000e-5(f)(1).

■ In contrast to the EEOC procedural framework, there is no requirement of exhaustion of administrative remedies for claims brought pursuant to the local anti-discrimination laws of Puerto Rico. Law 100 (employment discrimination); Law 69, 29 P.R. LAWS ANN. § 1321 *et seq.* (gender discrimination), Law 17, 29 P.R. LAWS ANN. § 155 *et seq.* (sexual harassment), Law 44, 1 P.R. LAWS ANN. § 501 *et seq.* (disability discrimination).[5] A Law 100 claimant has one year from the date of the last act of discrimination to file a lawsuit in state court but he does not need to file a charge with the ADU as a prerequisite to his action. *See* 29 P.R. LAWS ANN. § 146; *Olmo v. Young & Rubicam of Puerto Rico, Inc.*, 110 D.P.R. 740 (1981). Hence the question remains as to why the ADU issues letters granting permission to bring civil suits which seem to be equivalent to notices of right-to-sue.

At any point during an ADU charge investigation, if a claimant wishes to end the administrative proceedings in the agency and file a complaint *in state court,* he/she can request "permission to litigate" ("permiso para litigar") from the ADU. (*See Reglamento General de la Unidad Antidiscrimen* ("ADU Regulations") at Art. 6). Aside from the fact that this can be done within the Title VII framework only after one hundred and eighty days of filing the charge, this scenario seems tantamount to the federal one. But the lack of a provision in any of the local antidiscrimination laws requiring exhaustion of administrative remedies together with a close reading of the ADU Regulations reveals that the purpose of requiring a claimant to notify the ADU of its intention to

---

5. In contrast, statutes in some other states do require that a Plaintiff obtain a right-to-sue letter from the state FEPA before they can bring an action pursuant to state laws. *See e.g. Thompson v. Orange Lake Country Club, Inc.,* 224 F.Supp.2d 1368 (M.D.Fla.2002) ("In order to maintain a cause of action under the FCRA, a party must first exhaust all available administrative remedies. To bring a claim under the FCRA, an aggrieved party must first file a complaint with the Florida Commission, which then has the responsibility of issuing a reasonable cause determination."); *Vielma v. Eureka Co.,* 218 F.3d 458, 466-67 (5th Cir.2000) (EEOC letter would not trigger 60 day period within which to file action under the Texas Commission on Human Rights Act).

litigate a claim is to secure the agency's interruption and termination of the investigation of that claim.[6] Therefore, we find that just because the ADU issued a right-to-sue letter in this case does not mean that it was *the* letter that would trigger the ninety (90) day period for filing a civil action in federal court.

Moreover, two characteristics of the ADU letter support this determination. First, the letter states that the ADU will notify the EEOC of the issuance of such letter. Given the unique procedural provisions of Title VII and EEOC regulations, particularly with regards to exhaustion of administrative remedies and time limitations, it is not unreasonable for the recipient of an ADU letter to assume that another one from the EEOC will follow and that only this second one will trigger the 90–day period. In addition, at the Court's request (*See* Docket No. 24), Defendant has recently supplemented the record of this case with the notification letter sent by the ADU to the EEOC when a complainant requests a notice of right to sue. This letter, which is also sent to the parties involved as a courtesy copy, further clarifies the issue. In the letter, that like the ADU "right-to-sue letter" is dated June 7, 2001, the ADU informs the EEOC of the request for a notice of right to sue and refers the petition to the federal agency for issuance of a response to such petition.[7] Therefore, the ADU essentially acknowledges that the official grant of Plaintiff's petition will be issued by the EEOC.

Also significant is the failure of the ADU letter to put its recipient on notice of the limitations period that begins to run upon receipt of such letter. Such deficiency should render the letter insufficient to trigger such period. The EEOC right-to-sue letter is titled "Notice of Right–to–Sue" and specifically states in **bold letters** that if the claimant wishes to file a complaint, it must be filed within 90–days of receipt of the letter. Unlike the EEOC letter, the ADU letter does not state that complainant can file a suit in federal court and it must be that the "permiso para litigar" or petition to litigate referred to in the ADU Regulations is only operative in state courts.

The EEOC's Procedural Regulations, which regulate the contents of a notice of right-to-sue, attest these observations. Those regulations specifically require that such notice includes: 1) authorization to the aggrieved person to bring a civil action under Title VII pursuant to 42 U.S.C. § 2000e–5(f)(1) within 90–days from receipt of such authorization; 2) advice concerning the institution of such civil action by the person claiming to be aggrieved, where appropriate; 3) a copy of the

---

6. The applicable article states that:

> If at any time during the administrative proceedings, the claimant wishes to file an independent suit in court for the same complained-of actions, it shall notify its intention in writing to the ADU, justifying its petition to litigate. Once this requirement is met and with the authorization of the Secretary [of Labor of the Commonwealth of Puerto Rico], or an agent designated by her, the proceedings will be deemed terminated through the administrative closing of the case and without prejudice to the Secretary [of Labor of the Commonwealth of Puerto Rico] to intervene in the lawsuit if she were to find it necessary. The administrative closing of the case due to a request for a right-to-sue or for lack of interest will be with prejudice.
> ADU Regulations, Art. 6 (translation ours).

7. The body of the letter reads as follows: "Enclosed please find copy of a request for a Right–To–Sue letter sent on behave [sic] of chaging [sic] party on May 10, 2001. We refer this to your attention in order for the Equal Employment Opportunity to grant such petition."

charge; 4) the Commission's decision, determination, or dismissal, as appropriate. 29 C.F.R. § 1601.28(e).

### Pertinent Caselaw

Finally, we turn to review the few cases we came across where this or a similar issue was raised. Several courts have suggested that only a right-to-sue letter from the EEOC will trigger the 90–day period. In finding that an EEOC right-to-sue letter would not trigger the 60–day period for filing suit under the Texas Commission on Human Rights Act, the Fifth Circuit in *Vielma v. Eureka* also found that "receipt of a right-to-sue letter from the EEOC is the exclusive mechanism for commencing the federal 90–day period, and receipt of a state letter does not trigger the federal period." *Vielma v. Eureka Co.*, 218 F.3d 458, 466–67 (5th Cir.2000)(noting that its previous decision in *Dao v. Auchan Hypermarket*, 96 F.3d 787 (5th Cir.1996) where it found that "a civil action must be commenced 'within ninety days' after the charging party has received a 'right-to-sue' letter from the EEOC or state or local agency" was "simply incorrect."); *see also Muth v. Cobro Corp.*, 895 F.Supp. 254, 256 (E.D.Mo.1995)(holding that the 90–day period for filing federal anti-discrimination action is triggered only by receipt of EEOC "right to sue" letter); *Black v. Brown*, 555 F.Supp. 880, 884, n. 8 (D.R.I. 1983)("This Court rejects plaintiff's assertion that the right-to-sue letter from the [Rhode Island equal employment agency] is equivalent to the EEOC right-to-sue letter. The plain language of 42 U.S.C. § 2000e–5(f)(1) requires, as a condition precedent to litigating in federal court, a right-to-sue letter issued by the EEOC."); *Foreman v. General Motors Corp.*, 473

F.Supp. 166, 177 (E.D.Mich.1979) (finding that plaintiffs failed to satisfy the prerequisites for a Title VII suit because they only received a "right to sue" letter from the state agency, not the EEOC).

Moreover, in finding that a right-to-sue letter from the ADU would not serve as a substitute for that required from the Attorney General in cases against the government,[8] this Court found in *Marrero–Rivera* that "the ADU letter does not fulfill the requirements for a right-to-sue letter for suit under Title VII against either the Department of Justice as a government agency *or the other defendants.*" 800 F.Supp. 1024, 1028 (D.P.R.1992), *abrogated on other grounds, Ribot Espada v. Woodroffe*, 896 F.Supp. 69 (D.P.R.1995). The Court went on to say that "[t]he ADU letter allows plaintiff to file a local law cause of action, . . ." but "[f]or suit against the other defendants, plaintiff must produce a right-to-sue letter from the EEOC." *Id.* at 1028–29. "Nowhere in the regulations is it suggested that the deferral agency may issue the right-to-sue letter for anything other than an authorization to sue under local law." *Id.* at 1029. Similar procedural scenarios that have played out in other cases in this Court also support our decision. In *Fabregas v. I.T.T. Intermedia, Inc.*, where the claim was brought under ADEA and the ADU handled the administrative investigation, this Court stated that a "complainant should obtain a right-to-sue letter from the EEOC prior to filing a lawsuit." 954 F.Supp. 32, 33–35, n. 1 (D.P.R.1997). In *Leon–Nogueras v. Univ. of Puerto Rico*, the Court noted that the ADU had "issued the plaintiff a right-to-sue letter . . ., authorizing the plaintiff to bring suit for viola-

---

**8.** Under 29 C.F.R. § 1601.28(a), in cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue the notice of right to sue when there has been a dismissal of the charge . . . In all other cases . . . the Attorney General will issue the notice of right to sue.

tions of Puerto Rico employment discrimination laws" and that "[s]ubsequently, the local office of the EEOC issued the plaintiff a right-to-sue letter..., authorizing the plaintiff to bring suit for violations of federal employment discrimination laws." 964 F.Supp. 585, 589 (D.P.R.1997).

Even though we find the discussion set out above sufficiently supports our decision to reject Defendant's contention that the ADU letter triggered the 90-day period, we proceed to consider two different sources of support for Defendant's now futile proposition. The first, put forth by Defendant in its Motion to Dismiss, are several decisions of this Court where it seems to have been assumed that the ADU letter sufficed to commence the 90-day period. *See supra* at 98-99. In light of the vast amount of support we have come across for the proposition that only the EEOC notice of right to sue triggers the 90-day period, we are left with no choice but to conclude that in the cases cited by Defendant, *Cuello Suárez* and *Calderón-Trujillo*, the Court simply assumed that upon receipt of the ADU letter, the period began to run. Clearly, our findings are in discord with that aspect of those decisions.

The second and more elaborate reason is the fact that the ADU and the EEOC have entered into an agreement which essentially provides that in certain types of cases, the ADU will perform the functions of and virtually substitute the EEOC, and vice versa. Pursuant to the EEOC's designation of the Department of Labor's ADU as a state deferral agency, the two have entered into a "Worksharing Agreement" to facilitate the dual-track method established under Title VII for discrimination complainants.[9] The current agreement in force between these two agencies is the "FY 1999 Worksharing Agreement" ("PR Worksharing Agreement").

Although our decision could seem to render useless the implementation of a Worksharing Agreement and to frustrate its goals, no interpretation of the provisions of that agreement can be extended to connote an intention by either the ADU or the EEOC that they would substitute the other in handling all aspects of their administrative duties. The agreement basically extends to the filing and receipt, the initial handling and the investigation of a charge but not to one agency making merit determinations for the other. Issuing, authorizing or granting a right to sue in a court not within the same jurisdiction of the agency is not agreed to in the Worksharing Agreement.

Given the notable differences in the procedural framework of both sets of antidiscrimination laws and both administrative agencies, including the plain language and goals chosen by Congress and the legislature of the Commonwealth, we cannot extend the power of one agency acting on behalf of the other when the agencies to whom Congress and the Commonwealth's legislature gave the power to enforce and implement the antidiscrimination laws have not done so. We recognize that we have stated in the past that Title VII's procedural requirements are to be construed liberally, but we also said, they

---

**9.** The Procedural Regulations of the EEOC, codified at 29 C.F.R. § 1601 *et. seq.* state that: Agreements with Fair Employment Practice agencies. Pursuant to section 705(g)(1) and section 706(b) of title VII, the Commission shall endeavor to enter into agreements with FEP agencies to establish effective and integrated resolution procedures. Such agreements may include, but need not be limited to, cooperative arrangements to provide for processing of certain charges by the Commission, rather than by the FEP agency during the period specified in section 706(c) and section 706(d) of title VII. 29 C.F.R. § 1601.13(c).

should be construed liberally to effect the goals of Title VII of remedying discrimination in the workplace. *Silva v. Universidad de Puerto Rico,* 849 F.Supp. 829, 832 (D.P.R.1994). Therefore, we cannot liberally construe Title VII here to mean that a right-to-sue letter from the ADU serves to exhaust the administrative remedies of a Plaintiff in the equivalent federal agency, the EEOC.

## CONCLUSION

The presence of a Title VII claim requires that the procedural requirements under that statute must control the development of a case in federal court when a plaintiff wants to bring it under both local antidiscrimination laws and Title VII. The Supreme Court has also maintained that "the first hiatus," of Title VII's "dual-track method of procedure" is designed so that the state or local agencies get a sixty (60) day period during which attempt "to remedy the allegedly unlawful practice prior to any federal action, ... is designed to give state administrative agencies an opportunity to invoke state rules of law." *Yellow Freight System v. Donnelly,* 494 U.S. 820, 826, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). In contrast, the action by the EEOC "is a predicate for litigation based on the federal statute." *Id.*

In light of the foregoing, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The Motion to Dismiss under rules 12(b)(4) and 12(b)(5) is **DENIED** as to all Defendants; the Motion to Dismiss under 12(b)(6) is **GRANTED** as to Plaintiff's Title VII claims against individual Defendants Santiago and Falcón, which are **DISMISSED WITH PREJUDICE**; Plaintiff's constitutional claims against all Defendants are also **DISMISSED WITH PREJUDICE**, and finally Plaintiff's request for dismissal of the remainder of Plaintiff's claims against Defendant Wal–Mart Puerto Rico, Inc. as time-barred is **DENIED**.

SO ORDERED.