Jonathan **POLO–ECHEVARRIA**
and **Claudio Polo–Calderon,**
**Plaintiffs,**

v.

**CENTRO MEDICO DEL TURABO, INC. d/b/a Hospital Hima–San Pablo De Caguas; Corporacion Puertorriqueña De Salud; Joaquin Rodriguez–Benitez, Defendants.**

Civil No. 12–1006 (FAB).

United States District Court, D. Puerto Rico.

June 13, 2013.

Enrique J. Mendoza–Mendez, Mendoza Law Office, San Juan, PR, Juan R. Davila–Diaz, Hato Rey, PR, for Plaintiffs.

Marta D. Masferrer, Marta Masferrer Law Office, Antonio M. Cuevas–Delgado, Cuevas Kuinlam & Bermudez, Luis Enrique Romero–Nieves, Cuevas Kuinlam, Marquez & O'Neil, San Juan, PR, for Defendants.

## MEMORANDUM AND ORDER [1]

BESOSA, District Judge.

Before the Court are Centro Medico del Turabo, Inc. d/b/a Hospital HIMA–San Pablo de Caguas ("CMT"), Corporacion Puertorriquena de Salud ("CPS"), and Joaquin Rodriguez Benitez's ("Rodriguez") motions to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Docket Nos. 40 & 43.) Plaintiffs Claudio Polo–Calderon and Jonathan Polo–Echevarria opposed these motions. (Docket No. 46.)

For the following reasons, the Court **GRANTS** in part and **DENIES** in part both motions to dismiss. (Docket Nos. 40 and 43.)

## I. BACKGROUND

### A. Factual History

The Court takes the following facts as true, as pled in the amended complaint:

Plaintiff Jonathan Polo–Echevarria ("Jonathan") began "working as a clerk for defendants" on January 22, 2011. (Docket No. 27 at 3.) Defendant Rodriguez, the "resident agent" for both CPS and CMT, was Jonathan's supervisor. *Id.* Rodriguez began to make "sexually oriented comments" to Jonathan almost immediately after Jonathan began his job. *Id.* Rodriguez also sent Jonathan "sexually oriented text messages" and "sexually oriented invitations." *Id.* The amended complaint provides examples of Rodriguez's text messages and invitations to Jonathan, including messages that Rodriguez wanted to "jump on" and "grab" Jonathan. *Id.* at 4. Jonathan alleges that he was fired soon after he "submitted a written complaint at his work place" regarding Rodriguez's conduct and that his termination constituted retaliation. *Id.* at 3–4. Jonathan further alleges that no corrective action was taken after he reported the sexual harassment. *Id.*

Defendants CPS and CMT are both part of the Hospital Interamericano ("HIMA") group, and CMT is also known as HIMA. *Id.* at 2. CPS and CMT "share common management." *Id.* at 2–3. CPS's main practice location is at the HIMA hospital in Caguas, Puerto Rico. *Id.* at 3. CMT also operates at the HIMA hospital in Caguas. *Id.* Armando Rodriguez is both the vice

**1.** Lindsay Britton, a third-year law student at the University of New Hampshire School of Law, assisted in the preparation of this Memorandum and Order.

president of the HIMA group and president of the Board of Directors of CPS. *Id.* CPS and CMT also "share common personnel practices." *Id.* For example, HIMA referred Jonathan for pre-employment drug testing before he worked for CPS. *Id.* Based on these facts, the amended complaint concludes, "[b]oth entities exercised sufficient control over the terms and conditions of employment of Jonathan as to constitute a joint and/or single employer." *Id.*

## B. Procedural History

Plaintiff Jonathan brings this suit against defendants CMT, CPS, and Rodriguez for (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981; and (2) retaliation in violation of the Anti-retaliation proviso of Section 704(a) of Title VII. He invokes the Court's original jurisdiction under 28 U.S.C. §§ 1331, 2201, and 2002. He also invokes supplemental jurisdiction to decide claims arising under Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 §§ 146 *et seq.;* Law No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29 §§ 1321 *et seq.;* Law No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29 §§ 155; Law No. 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29 §§ 185(a) *et seq.;* articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141–42; and the Constitution of the Commonwealth of Puerto Rico. Jonathan's father, Claudio Polo–Calderon ("Claudio") also invokes the Court's supplemental jurisdiction to decide his derivative claim pursuant to article 1802 against defendants CMT, CPS and Rodriguez.

Defendants CPS and Rodriguez answered the amended complaint and asserted a plethora of affirmative defenses and additional facts. (*See* Docket No. 37.)

They then filed a motion to dismiss for failure to state a claim upon which relief can be granted. (Docket No. 43.)

CPS filed its motion before the First Circuit Court of Appeals decided *Rodriguez–Reyes v. Molina–Rodriguez,* 711 F.3d 49 (1st Cir.2013), and, therefore, measures the plausibility of Jonathan's allegations against the *prima facie* standard. Contending that Rodriguez's alleged conduct was not severe or pervasive, and that the amended complaint does not contain sufficient factual allegations to make Jonathan's right to recovery plausible, CPS and Rodriguez seek dismissal of all claims asserted against them. *Id.* at 3. (Docket No. 43 at 9–11.) CPS further argues that Jonathan's claims pursuant to specific anti-discrimination statutes preclude his claims pursuant to the general provisions of article 1802 of the Civil Code. *Id.* at 17. Rodriguez also argues that no individual liability exists pursuant to Title VII and that Jonathan failed to exhaust his administrative remedies before filing suit. (Docket No. 43 at 15–16.) Although Jonathan failed to identify his direct employer in the amended complaint, CPS has not denied an employer-employee relationship with Jonathan.

In defendant CMT's answer to the amended complaint, it asserts that it was never Jonathan's employer. (Docket No. 39.) CMT then filed a motion to dismiss, contending that the amended complaint does not plead sufficient factual content to raise Jonathan's right to relief against CMT above the speculative level. (Docket No. 40.) CMT specifically argues that it was not Jonathan's employer and that the amended complaint does not provide sufficient notice of the facts upon which Jonathan bases his alternate single employer and joint employer theories of liability. *Id.* at 5–7.

## II. LEGAL STANDARD

Rule 12(b)(6) permits a court to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodriguez–Reyes,* 711 F.3d at 52–53 (quoting *Santiago v. Puerto Rico,* 655 F.3d 61, 72 (1st Cir.2011)). A court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Rodriguez–Reyes,* 711 F.3d at 53 (quoting *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir.2011)).

The factual material pled must be sufficient "to raise a right to relief above the speculative level," and to permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Supreme Court has held that a plaintiff's pleading must cross "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 577, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[A] prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold." *Rodriguez–Reyes,* 711 F.3d at 51. Nevertheless, "[t]hose elements are part of the background against which a plausibility determination should be made." *Id.* at 54. The Court will draw "on its judicial experience and common sense" in evaluating the amended complaint's plausibility. *Grajales v. P.R. Ports Auth.,* 682 F.3d 40, 44 (1st Cir.2012) (internal citation omitted). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere

conjecture, the complaint is open to dismissal." *SEC v. Tambone,* 597 F.3d 436, 442 (1st Cir.2010) (*en banc* ).

## III. DISCUSSION

### A. Jonathan's Employment Relationship with CMT

In an attempt to show that CMT and CPS are both liable for the conduct of which Jonathan complains, his amended complaint obfuscates whether CMT or CPS employed him. (Docket No. 27 at 2–3.) Rather than identify his direct employer, Jonathan identifies facts that arguably demonstrate that CPS and CMT were a single employer or joint employer, and then states that he "work[ed] as a clerk for [both] defendants." *Id.* at 3. "CPS and Rodriguez admit that co-plaintiff Jonathan Polo rendered services to CPS." (Docket No. 37 at 2.) CPS also does not dispute that it is an employer. *Id.* CMT contends, however, that the amended complaint lacks sufficient facts showing that Jonathan is entitled to relief from CMT because it was not his employer. (Docket No. 40 at 6–7.)

The First Circuit Court of Appeals has indicated that the motion to dismiss stage "require[s] only that the complaint contain well-pleaded allegations that, taken as true, establish[ ] an employment relationship between plaintiffs and defendants." *Melendez–Fernandez v. Special Care Pharmacy Servs., Inc.,* No. 11–1662, 2012 WL 4813528, at *5 (D.P.R.2012) (citing *Cavallaro v. UMass Mem'l. Healthcare, Inc.,* 678 F.3d 1, 9–10 (1st Cir.2012) (finding that a "joint employer" or "integrated enterprise" theory failed to withstand a 12(b)(6) motion to dismiss because the plaintiff pled no facts that, if proven, would establish any of the eight corporate defendants as her direct employer in a Fair Labor Standards Act claim)). In *Cavallaro,* the plaintiffs alleged there was an affiliation between the eight hospital defen-

dants, but failed to allege which was the direct employer; the defendants identified the direct employer themselves, however, and the First Circuit Court of Appeals found that the plaintiffs should be entitled to amend their complaint. *Id.* at 9–10. Nevertheless, the court of appeals warned that "[a] number of courts have made clear that they will not put up with game-playing omissions of plainly relevant detail, and we are increasingly sympathetic to this view." *Id.* at 10.

■ Although plaintiff Jonathan alleged that he worked as a clerk for both defendants without identifying which one was his direct employer, CPS does not dispute that Jonathan provided services to CPS or that CPS is an employer. (Docket No. 27 at 4; Docket No. 37 at 2.) CMT argues, however, that the claims against it should be dismissed because the amended complaint does not contain factual allegations as to who at CMT exercised what control over Jonathan's employment; how CMT exercised this control; or when CMT exercised this control. (Docket No. 40 at 7.) Jonathan's claim, however, survives the motion to dismiss stage because the Court can plausibly infer that either the single employer or joint employer test will be met; the heightened analysis that CMT desires the Court to make is more appropriate for summary judgment. *Villafañe–Colon v. B Open Enterprises, Inc.,* No. 11–2099, 932 F.Supp.2d 274, 279, 2013 WL 1201140, at *4 (D.P.R. Mar. 26, 2013) (citing *Rivas v. Federacion de Asociaciones Pecuarias de P.R.,* 929 F.2d 814, 816 (1st Cir.1991)).

■ The Supreme Court, recognizing the National Labor Relations Board's approach to determining whether "nominally separate business entities" comprise a single employer, stated that "[t]he controlling criteria ... are interrelation of operations, common management, centralized control of labor relations[,] and common ownership." *Radio and Television Broad. Technicians Local 1264 v. Broad. Serv. of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (citations omitted). In contrast to the single employer inquiry—where the question is whether two "allegedly separate" entities "comprise a single enterprise"—the joint employer inquiry focuses on "which of two, or whether both, [defendants] control, in the capacity of employer the labor relations of a given group of workers." *Rivas,* 929 F.2d at 820, n. 16 (internal quotations and citations omitted).

Crediting the factual allegations in the amended complaint, as the Court must do at this stage, it is plausible that Jonathan will be able to satisfy the single employer or the joint employer test. He alleges that the supervisor who sexually harassed him, Rodriguez, was the resident agent of both CPS and CMT. (Docket No. 27 at 3.) Both CPS and CMT are also both part of the HIMA group and share personnel practices. *Id.* It can be reasonably inferred, therefore, either that CPS and CMT "comprise a single enterprise" or that both control "the labor relations of a given group of workers." Accordingly, CMT's motion to dismiss the Title VII and retaliation claims against it is **DENIED.**

### B. Hostile Work Environment

■ Title VII makes it unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Sexual harassment, including sexual harassment by a member of the same sex as the victim, constitutes discrimination "because of sex" within the

meaning of Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The Equal Employment Opportunity Commission ("EEOC")'s guidelines provide:

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual ['quid pro quo'], or (2) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment ["hostile work environment"].

29 C.F.R. § 1604.11(a) (2013). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

▪ A plaintiff pursuing a hostile work environment claim must prove:

> (1) that she (or he) is a member of a protected class; (2) that she [or he] was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did per-

ceive it to be so; and (6) that some basis for employer liability has been established.

*Valentin–Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir.2006). Being subjected to a hostile work environment is an adverse employment action and, therefore, a plaintiff bringing a hostile work environment claim does not have to demonstrate that he or she suffered a separate adverse employment action to state a claim for sex discrimination. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

▪ In their joint motion to dismiss, defendants CPS and Rodriguez fault plaintiff Jonathan for failing to allege sufficient facts to satisfy a *prima facie* case of a hostile work environment/sexual harassment claim. (Docket No. 43 at 9.) They argue that Jonathan's claim must be dismissed because the alleged sexual harassment was not severe or pervasive. *Id.* at 13–14. CPS and Rodriguez also argue that the amended complaint does not include facts showing how the sexual harassment affected Jonathan's terms and conditions of employment, what adverse employment action Jonathan suffered, and even that Jonathan was "unjustly dismissed from employment." *Id.* at 10–11. CPS also argues that the amended complaint does not establish a basis for employer liability. *Id.* at 4.

The amended complaint states, however, that Jonathan's supervisor, defendant Rodriguez, created a hostile work environment, beginning "almost immediately" after Jonathan began his work and lasting throughout his brief employment. (Docket No. 27 at 3–4.) The amended complaint provides five specific examples of the messages and invitations that Jonathan received from Rodriguez, but expressly states that these are only "some" of the messages and invitations Jonathan re-

ceived between January 22 and February 8, 2011. *Id.*

■ The Court finds that a basis for employer liability exists. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The amended complaint states that Rodriguez was Jonathan's supervisor. (Docket No. 27 at 3.) Therefore, Jonathan has established a basis for employer liability in the amended complaint.[2] Crediting the factual allegations contained in the amended complaint, Jonathan has plausibly alleged a hostile work environment.[3]

Jonathan is not required to plead every element of a *prima facie* case. *Rodriguez–Reyes,* 711 F.3d at 51. A plaintiff also need not identify each instance of sexual harassment for an amended complaint to survive a motion to dismiss. *Gorski v. N.H. Dept. of Corr.,* 290 F.3d 466, 474 (1st Cir.2002) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In *Gorski,* the district court granted a motion to dismiss because the seven instances of sexual harassment identified in the amended complaint did not

satisfy the "severe and pervasive" requirement of a hostile work environment. 290 F.3d at 470–71. In reversing the district court's ruling, the First Circuit Court of Appeals noted that while there is "no 'mathematically precise test,'" the complaint pled sufficient facts to state a claim for sexual harassment. *Id.* at 472 (quoting *Harris,* 510 U.S. at 22, 114 S.Ct. 367). "'[L]ooking at all the circumstances,' which may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,'" the First Circuit Court of Appeals regarded as sufficient the plaintiff's allegation that she was subjected to a hostile work environment and her citation of specific examples of hostile comments. *Gorski,* 290 F.3d at 472 (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). "[L]ooking at all the circumstances" in this case, Jonathan has pled "enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial." *Gorski,* 290 F.3d at 472; *Rodriguez–Reyes,* 711 F.3d at 54.

### C. Retaliation

■ Pursuant to Title VII, an employer may not retaliate against an em-

---

**2.** The Court does not address plaintiff Jonathan's argument that CPS is not entitled to the *Ellerth–Faragher* affirmative defense at this stage of litigation, because it is a fact-specific inquiry best reserved for summary judgment. The *Ellerth–Faragher* defense protects employers from vicarious liability when a supervisor harasses a subordinate, but only when the harassment does not lead to a tangible employment action. *Chaloult v. Interstate Brands Corp.,* 540 F.3d 64, 65–66 (1st Cir. 2008). To avail itself of this defense successfully, an employer must prove that it exercised reasonable care to prevent and correct sexual harassment in the workplace and that the employee did not act reasonably to avoid harm. *Id.* at 66. Based on the factual allega-

tions in the amended complaint, CPS would be unlikely to prevail based on an *Ellerth–Faragher* defense at this time because Jonathan alleges that CPS did not have a policy to prevent sexual harassment, or if it did have such a policy Jonathan was never informed of it. It is further alleged that Jonathan submitted an internal complaint regarding the sexual harassment and CPS took no corrective action.

**3.** Having stated this claim, Jonathan is not required to plead an additional adverse employment action to state a claim for sex discrimination in violation of Title VII. *See Meritor,* 477 U.S. at 66–67, 106 S.Ct. 2399.

ployee who has opposed an employment practice that violates Title VII. 42 U.S.C. § 2000e–3(a). To prove a claim for retaliation, a plaintiff must show (1) that "she [or he] engaged in protected conduct, (2) that she [or he] was subjected to an adverse employment action; and (3) that there was a causal connection between the first and second elements." *Valentin–Almeyda,* 447 F.3d at 94 (citing *Noviello v. City of Boston,* 398 F.3d 76, 88 (1st Cir.2005)). The adverse employment action need not affect the terms or conditions of employment, but must be the type of action that would discourage a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 62–63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). "Depending on the particular set of facts at hand, 'temporal proximity alone can suffice to meet the relatively light burden of establishing a *prima facie* case of retaliation.'" *Bibiloni Del Valle v. Puerto Rico,* 661 F.Supp.2d 155, 170 (D.P.R.2009) (quoting *DeCaire v. Mukasey,* 530 F.3d 1, 19 (1st Cir.2008)).

██ The amended complaint alleges that shortly after plaintiff Jonathan submitted a complaint regarding his hostile work environment, "he was terminated, *ipso facto.*" (Docket No. 27.) Drawing all inferences in Jonathan's favor, the amended complaint states a plausible claim for retaliation because Jonathan engaged in the protected conduct of complaining to his employer about the hostile work environment and was shortly thereafter terminated from his employment. Accordingly, defendants' motion to dismiss the retaliation claim is **DENIED.**

### D. Claims Against Rodriguez in his Individual Capacity

Defendant Rodriguez contends that the claims against him in his individual capacity must be dismissed because Title VII

does not provide for individual liability and Jonathan failed to name Rodriguez in his administrative complaint. (Docket No. 43 at 15–16.) The amended complaint states, however, that "[d]efendant, Joaquin Rodriguez–Benitez ("Rodriguez"), is being sued to respond for his own illegal actions perpetrated against Jonathan, *he is liable as such under the local laws invoked in this action.*" (Docket No. 27 at 3) (emphasis added). The Court thus does not read the amended complaint as an attempt to sue Rodriguez in his individual capacity for alleged violations of Title VII. Rodriguez is correct that "there is no individual liability under Title VII." *Fantini v. Salem State College,* 557 F.3d 22, 30 (1st Cir.2009). Because Jonathan is only suing Rodriguez in his individual capacity pursuant to local laws, however, it is irrelevant that he cannot be liable under Title VII and that Jonathan allegedly failed to exhaust his administrative remedies as to Rodriguez before filing suit. *See Perez Cordero v. Wal–Mart PR, Inc.,* 235 F.Supp.2d 95, 101–02 (D.P.R.2002) (citing P.R. LAWS ANN. tit. 29 §§ 146 *et seq.,* P.R. LAWS ANN. tit. 29 §§ 1321 *et seq.,* P.R. LAWS ANN. tit. 29 §§ 155, P.R. LAWS ANN. tit. 1 §§ 501 *et seq.*). Accordingly, the motion to dismiss all claims against Rodriguez in his personal capacity is **DENIED.**

### E. State Law Claims

Plaintiff Jonathan does not oppose defendants CPS and CMT's motions to dismiss the claims brought against them pursuant to article 1802. Jonathan's article 1802 claim against Rodriguez is precluded by his claims against him pursuant to specific anti-discrimination statutes like Puerto Rico Laws Nos. 100, 17, and 29. *See, e.g., Barreto v. ITT World Directories Inc.,* 62 F.Supp.2d 387, 393 (D.P.R.1999) ("In Puerto Rico the provisions of the Civil Code are supplementary to special legisla-

tion."). Accordingly, the Court **DISMISS-ES** plaintiff Jonathan's article 1802 claims against defendants CPS, CMT, and Rodriguez. Having denied the motions to dismiss Jonathan's federal claims, however, the Court **DENIES** the motions to dismiss Jonathan's other state law claims, because those claims arise from the same set of operative facts and form part of the same case or controversy. *See* 28 U.S.C. § 1367.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions to dismiss Jonathan's claims pursuant to article 1802 against CPS, Rodriguez, and CMT and **DENIES** the motions to dismiss all other claims.

**IT IS SO ORDERED.**