ROBERTA TAGGART & others[1] vs. TOWN OF WAKEFIELD
& others.[2]

No. 09-P-7.

Middlesex. January 5, 2010. - December 15, 2010.

Present: CYPHER, KAFKER, & TRAINOR, JJ.

*Practice, Civil,* Summary judgment. *Fire Fighter,* Hiring. *Municipal Corporations,* Fire department. *Administrative Law,* Regulations. *Minimum Fair Wage Law. Words,* "Working time," "Fixed location," "Regular work site."

In an action brought in Superior Court by ten probationary firefighters (plaintiffs) seeking, under the Minimum Fair Wage Law, G. L. c. 151, §§ 1A and 1B (law), payment on an overtime basis for travel time incurred while attending the recruit training program at the Massachusetts Fire Academy (academy), the judge did not err in granting summary judgment in favor of the defendant (the town employing the plaintiffs), where the academy was, for the purposes of 455 Code Mass. Regs. § 2.03(4), a regulation promulgated pursuant to the law, the plaintiffs' fixed and regular work site during the period of their training program [422-426]; and where the training program, which was a mandatory requirement for probationary firefighters to earn tenure as well as a necessary prerequisite to develop the ability to perform their duties safely and professionally, was not required for the "convenience" of the employer within the meaning and intent of that regulation [426-428].

CIVIL ACTION commenced in the Superior Court Department on May 10, 2007.

The case was heard by *Dennis J. Curran,* J., on motions for summary judgment.

*Leah Marie Barrault* for the plaintiffs.

*John Foskett* for the defendants.

TRAINOR, J. This case raises the question whether the Wage Act, G. L. c. 149, § 148, requires the town of Wakefield (town)

---

[1]Eugene Ducette, III; Robert Ford; John Hurley; Robert Brown; Richard Cardavelli; Marnie Sheeran; Joe Nee; John Walsh; and Ken Lyons.

[2]David L. Parr, in his capacity as chief of the Wakefield fire department; Thomas Butler, in his capacity as town administrator of Wakefield; and the board of selectmen of Wakefield.

to compensate ten probationary firefighters for travel time incurred while attending the recruit training program at the Massachusetts Fire Academy (MFA) in Stow. The plaintiffs seek, under G. L. c. 151, §§ 1A and 1B, payment for such travel time on an overtime basis, and appeal the granting of summary judgment in favor of the town.

In 2005, the town hired the plaintiffs as firefighters and each attended the MFA at some point between 2005 and 2006. Under the collective bargaining agreement between the Wakefield firefighter's union and the town, new recruits with no prior firefighting experience "will be sent to the Fire Academy for training during the first year of employment, at the discretion of the Chief and subject to availability of funds."[3] The town has sent all new firefighters to the twelve-week recruit training program at the MFA and has required successful completion of the program as a condition of employment. New firefighters, including the plaintiffs, attend the program five days a week for a total of forty hours but are paid for forty-two hours, consistent with the town's regular firefighters' work week. The plaintiffs traveled approximately one hour each way from their residences in Wakefield to the MFA, with the exception of one plaintiff who traveled from Andover. During this training period, the plaintiffs reported directly to the MFA and not to the town's fire department headquarters. In addition, when leaving the MFA for the day, the plaintiffs went directly home.

*Discussion.* We review de novo the grant of summary judgment, *District Attorney for the N. District* v. *School Comm. of Wayland*, 455 Mass. 561, 566 (2009), and determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See *DiLiddo* v. *Oxford St. Realty, Inc.*, 450 Mass. 66, 70 (2007). In making this determination, "[w]e may consider any ground supporting the trial judge's ruling." *Foster* v. *Group Health Inc.*, 444 Mass. 668, 672 (2005).

General Laws c. 151, § 1A, provides in pertinent part, "no

---

[3]Two of the plaintiffs were allowed to complete the training after their initial twelve-month probationary period.

employer . . . shall employ any of his employees . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed."[4] The plaintiffs claim that the time spent traveling between their residences and the MFA, which exceeded the time to travel from their residences to the town's fire department headquarters, was compensable after computing § 1A's weekly forty-hour threshold. Withholding compensation for this travel time, the plaintiffs claim, also violated the requirements of the Wage Act, G. L. c. 149, § 148.[5]

General Laws c. 151, § 1A, does not expressly address the question whether travel time is considered to be hours worked and, therefore, compensable. Generally, the types of activities that are considered to be hours worked and compensable are defined through the State regulatory process. The division of occupational safety (DOS or division) administers and interprets the Minimum Fair Wage Law, G. L. c. 151, and the regulations promulgated pursuant to that statute. 455 Code Mass. Regs. § 2.00 (2003).

Working time is defined in 455 Code Mass. Regs. § 2.01 as "all time during which an employee is required to be on the employer's premises or to be on duty, or to be at the prescribed work site, and any time worked before or beyond the end of the normal shift to complete the work." In addition, 455 Code Mass. Regs. § 2.03(4)(a) (sometimes referred to as the regulation) provides:

> "Ordinary travel between home and work is not compens-

---

[4]The text of § 1A is virtually identical to the text of the Federal Fair Labor Standards Act, 29 U.S.C. § 207(a)(1) (1961).

[5]General Laws c. 149, § 148, reads in pertinent part:

> "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . . An employer, when paying an employee his wage, shall furnish to such employee a suitable pay slip, check stub or envelope showing the name of the employer, the name of the employee, the day, month, year, number of *hours worked*, and hourly rate, and the amount of deductions or increases made for the pay period" (emphasis added).

able working time. However, if an employee who regularly works at a *fixed location* is required, *for the convenience of the employer*, to report to *a location other than his or her regular work site*, the employee shall be compensated for all travel time in excess of his or her ordinary travel time between home and work with allowance for associated transportation expenses" (emphasis added).

In order for travel time between home and work to be compensable under § 2.03(4)(a), two requirements must be met. First, the employee must regularly work at a "fixed location." Second, the employee must be required, "for the convenience of the employer, to report to a location other than his" "fixed" "regular work site." The regulation does not define any of these terms. How we define and apply the terms "fixed location," "regular work site," and "for the convenience of the employer" to the facts of this case will determine whether the plaintiffs' travel time to the MFA is compensable.

*Fixed location.* The parties cite DOS opinion letters in support of their interpretations of 455 Code Mass. Regs. 2.03(4). In Opinion Letter MW-2001-012 (October 9, 2001), the division stated that employees who are normally assigned to one work site but who are required to attend a one-day training session at an alternate work site are entitled to compensation for travel time in excess of their normal commuting time.[6] The division also determined that "[t]he requirement to compensate . . . applies regardless of whether it is a temporary one or five-day reassignment from the regular work site."

Opinion Letter MW-2002-007 (March 7, 2002) indicates that "an employee's regular work site" may be the location to which the employee reports for an extended but temporary period of time. Referring to a temporary job site, the division stated that "travel to an employee's regular work site at the beginning of the workday and travel from the same at the end of the work day is not 'working time,' and therefore is not compensable time." In Opinion Letter MW-2002-007, the division designated a temporary job site of a general contractor as the employee's

---

[6]The division also determined that the one-day training assignment was for the convenience of the employer.

regular work site. It appears, however, that the division's opinion letter is based on the principle that in the construction industry, both public and private, the construction site, regardless of its duration, is the regular work site. The DOS opinion letters provide little guidance in the context of the case before us.

We apply the same rules of construction to regulations as to statutes, see *Johnson* v. *Commissioner of Pub. Welfare*, 414 Mass. 572, 578 (1993), and accordingly ascribe the ordinary and common meanings to undefined terms. See *Murphy's Case*, 53 Mass. App. Ct. 708, 716 (2002). We understand "fixed" to mean "stationary," or "not subject to change." Webster's Third New Intl. Dictionary 861 (1993). Under the regulation, "fixed" refers to the location of an employee's work site. The length of an assignment is a relevant factor as to whether a work site is "fixed," but is not solely determinative. Additionally, the relevance of the length of the assignment will depend significantly on the industry to which it is being applied. The possibility that an employee's work site can be changed does not necessarily mean that the employee's present site is not "fixed." "Fixed" concerns the nature of the employee's present work site at the time the employee is required to report to that site.[7] If the site were to change from day to day, or after a short period of time, the work site would not be "stationary" or "unchanging in condition," and therefore could not be considered "fixed."[8]

Here, the plaintiffs reported to the MFA every day during the twelve-week recruit training program, and to no other location for the entire period. It can be said that the plaintiffs' work site was both "stationary" and "not subject to change" during that period since they reported to a particular work site every day. The fact that at the end of the training period, the plaintiffs could expect to resume their assignment to the town's fire department headquarters does not mean the MFA was not their fixed work site during the training period. The nature of the training

[7]For example, firefighters in large cities may be assigned to different fire stations during the length of their careers. Each such assignment becomes their fixed work site.

[8]Such an analysis would only involve the regulation, however, if the employee otherwise had a "fixed" regular work site. This situation could apply to the construction industry, for example.

assignment was for a defined time period, but within that twelve-week period the MFA was the plaintiffs' "fixed" work site.

We do not think that a one-day or five-day temporary assignment is the equivalent of the twelve-week assignment here, during which the plaintiffs performed the duties of their job at the fixed location of the MFA.[9] We agree with the judge that the MFA, during this period of time, constituted the plaintiffs' fixed and regular work site.[10]

*Convenience of the employer.* The plaintiffs argue that because neither the collective bargaining agreement nor any general or special law requires a firefighter to attend a training program, attendance is for the convenience of the town. In addition, they argue that the program at the MFA was chosen because it operates at no cost to the town, but is personally inconvenient to the individual firefighters because of its distance from the town. The plaintiffs point out that there are closer and more convenient training programs available.

The collective bargaining agreement provides that "[t]he Town agrees that recruits [i.e., new hires who have no prior fire fighting experience] will be sent to the Fire Academy for training during the first year of employment, at the discretion of the Chief and subject to available funds." The plaintiffs argue that the provision is ambiguous and at best leaves the issue of training to the discretion of the fire chief. It is undisputed, however, that the firefighter's union requested the training provision be included in the collective bargaining agreement.[11] Whether the training is mandatory or discretionary, it is also undisputed that

---

[9]See Opinion Letter MW-2001-012 (October 9, 2001). However, even a temporary one-day or five-day work assignment would not create compensable travel time unless the assignment was also made for the "convenience" of the employer.

[10]Since 455 Code Mass. Regs. § 2.03(4)(a) requires that an employee regularly work at a fixed location *and* be required to report to work at another location for the convenience of the employer, failure to prove either requirement will defeat a claim for compensation for additional travel time. However, since the parties have fully briefed and argued both requirements, and since DOS opinion letters discuss both prongs of the regulation, we will continue our analysis.

[11]The collective bargaining agreement refers to "the Fire Academy" and not a fire academy. It would appear that reference to the "Fire Academy" may actually refer specifically to the MFA, which is generally known as the "Fire Academy."

employment as a firefighter beyond the probationary period was conditioned, as town policy, on successful completion of a training program. This was not a new policy first imposed on these plaintiffs. The plaintiffs and the union knew what was required to achieve tenure in the position of firefighter.

In addition, the town has adopted the civil service law for its firefighters. G. L. c. 31. The law requires that a firefighter must perform his or her duties "for a probationary period of twelve months" before becoming "tenured" in the position.[12] See G. L. c. 31, § 61, inserted by St. 1978, c. 393, § 11. If the "conduct or capacity" of a probationary employee, "or the character or quality of work performed by" the employee "is not satisfactory to the appointing authority," the employee may be terminated upon written notice with a copy to the State personnel administrator. See G. L. c. 31, § 34, inserted by St. 1978, c. 393, § 11. It was the town's policy that a firefighter could not achieve "tenure" without first completing a training program.

The plaintiffs would have us define "convenience" as something that is "at the will of" or "at the request of" the town. They would also have us read "convenience" to mean only that which is "comfortable" or "easy." We do not agree with either interpretation of the phrase when applied here. As a practical matter, since the town is the employer, everything a firefighter does in his or her work capacity will be done at the town's request. The fact, therefore, that an employer directs an employee does not mean that an employee's regular duties are performed for the "convenience of the employer" within the meaning of the regulation.

The meaning of the word "convenience" as used in the regulation is an imprecise concept, and susceptible of more than one meaning. One definition of "convenience" is "[t]he quality of being suitable to one's comfort, purpose, or needs." American Heritage Dictionary of the English Language 401 (4th ed. 2006). This definition is compatible with the analogous Federal regulation's use of the word "benefit." See analysis, *infra*, and note 14, *infra*. It is also compatible with the regulation's intent,

---

[12]Once a civil service employee is "tenured," he or she may only be terminated for "just cause," with its attendant procedural requirements and protections. See G. L. c. 31, § 41, inserted by St. 1978, c. 393, § 11.

particularly in light of the fact that the regulation's basic presumption is that home to work travel time is not compensable. There are situations where it is clear that a work assignment is entirely for the convenience or benefit of the employer. An employee who is regularly assigned to a fixed work site, for example, but is temporarily assigned to another location in order to cover for a sick or vacationing employee, has been assigned entirely for the convenience or benefit of the employer.[13]

In *Imada* v. *City of Hercules*, 138 F.3d 1294 (9th Cir. 1998), the court interpreted the provision in 29 C.F.R. § 785.37 (1997) that travel time is compensable only when it is "for the employer's benefit."[14] The court held that police officer off-site training, mandated by State law, was not primarily for the "employer's benefit," reasoning that "it is at least equally beneficial to the officers, who must attend [the] training in order to meet and maintain state law enforcement certification requirements." *Id.* at 1297.

The mandatory training at issue here is not for the "convenience" of the town, but is rather an integral and necessary requirement for probationary firefighters to earn tenure as a firefighter. More importantly, it is a necessary prerequisite to develop the ability to perform their duties safely and professionally.

In conclusion, we agree with the trial judge that the MFA was, for the purposes of 455 Code Mass. Regs. § 2.03(4), the plaintiffs' "regular work site" during the period of their training program. Additionally, the training program was not required for the "convenience" of the employer within the meaning and intent of the regulation.

*Judgment affirmed.*

[13]Short training assignments present a more difficult interpretation of the regulation's meaning of "convenience." A one-day training assignment was deemed to be for the "convenience" of the employer by DOS. The opinion letter, however, tells us nothing about the nature and circumstances of the training. DOS based its decision entirely on the fact that the employee was "assigned to" the training session, indicating, apparently, that the training session was therefore for the convenience of the employer. Opinion Letter MW-2001-012 (October 9, 2001).

[14]DOS has described 29 C.F.R. § 785.37 as "contain[ing] a similar requirement" to that contained in 455 Code Mass. Regs. § 2.03(4)(a). Opinion Letter MW-2001-012 (October 9, 2001) at n.1.