# United States Court of Appeals
## For the First Circuit

---

No. 11-1073

PATRICIA CAVALLARO, on behalf of herself and all other employees
similarly situated; MONIQUE HERMAN, on behalf of herself and all
other employees similarly situated,

Plaintiffs, Appellants,

v.

UMASS MEMORIAL HEALTHCARE, INC.; UMASS MEMORIAL HOSPITALS, INC.;
UMASS MEMORIAL MEDICAL CENTER, INC.; HEALTHALLIANCE HOSPITALS,
INC.; MARLBOROUGH HOSPITAL; THE CLINTON HOSPITAL ASSOCIATION;
WING MEMORIAL HOSPITAL CORPORATION; JOHN O'BRIEN; PATRICIA WEBB,

Defendants, Appellees.

---

No. 11-1793

PATRICIA CAVALLARO, on behalf of herself and all other employees
similarly situated; MONIQUE HERMAN, on behalf of herself and all
other employees similarly situated,

Plaintiffs, Appellants,

v.

UMASS MEMORIAL HEALTH CARE, INC.; UMASS MEMORIAL HOSPITALS, INC.;
UMASS MEMORIAL MEDICAL CENTER, INC.; HEALTHALLIANCE HOSPITALS,
INC.; MARLBOROUGH HOSPITAL; THE CLINTON HOSPITAL ASSOCIATION;
WING MEMORIAL HOSPITAL CORPORATION; JOHN O'BRIEN; PATRICIA WEBB;
UMASS MEMORIAL HEALTHCARE 401K,

Defendants, Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

---

Before

Boudin, Lipez and Howard,

<u>Circuit Judges</u>.

---

  <u>Patrick J. Solomon</u> with whom <u>Guy A. Talia</u>, <u>Thomas & Solomon LLP</u>, <u>Jody L. Newman</u> and <u>Collora LLP</u> were on brief for appellants.
  <u>Lisa A. Schreter</u> with whom <u>Angelo Spinola</u>, <u>Bradley E. Strawn</u>, <u>Anne M. Mellen</u>, <u>Gregory C. Keating</u> and <u>Littler Mendelson, P.C.</u> were on brief for appellees.

---

April 18, 2012

---

**BOUDIN**, **Circuit Judge**.  This appeal embraces two of the many private lawsuits brought against healthcare providers throughout the country by a single law firm.  These two suits, like others of the same pattern, allege that various hospital employees who work for the particular hospital or hospital group have been deprived of compensation for work performed during their meal break, for work performed before and after shifts, and for time spent attending training sessions.

The named plaintiffs, Patricia Cavallaro and Monique Herman, brought the two lawsuits at issue here seeking to represent a potential class of hospital employees--some covered by collective bargaining agreements ("CBAs") and others not; the defendants were eight named entities (primarily hospitals and health care providers) in the UMass Memorial Healthcare network ("UMass") and two officials of UMass (CEO John O'Brien and Human Resources VP Patricia Webb).  Ultimately, the district court dismissed all but one claim on grounds of "complete preemption" and the remaining claim on the merits.[1]

One case, denominated No. 11-1073 in this court, began as an action in Massachusetts state court and asserted only state law

_____

[1]Cavallaro v. UMass Mem'l Healthcare, Inc., No. 09-40181 (D. Mass. July 2, 2010) (order granting motion to dismiss), Cavallaro v. UMass Mem'l Healthcare, Inc., No. 09-40181 (D. Mass. Dec. 20, 2010) (order granting motion for reconsideration).  The court originally dismissed only certain of the claims and remanded others to state court, but then reconsidered and dismissed all claims.

claims, reflecting the type of wage issues loosely described above, based on contract, common law torts and regulatory statutes. The case was removed by UMass on the ground--revealed not in the complaint but in the motion to dismiss--that Cavallaro and Herman are employees of one network hospital, UMass Memorial Medical Center ("UMMC") and, as members of the Massachusetts Nursing Association, the terms of their employment are governed by a CBA.

The second case, No. 11-1793 in this court, began as an original action in the federal district court and, raising like wage issues, asserted claims under federal law--specifically, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, and the Employee Retirement Income Security Act ("ERISA"), id. §§ 1059(a)(1), 1104(a)(1). The district court dismissed the claims on the ground that the plaintiffs had failed adequately to allege an employment relationship with any of the named defendants.[2]

The plaintiffs appeal in each of the two cases. The two appeals, although addressed to the same or overlapping conduct, present different questions and we address them separately. The issues relating to the state law claims largely turn on legal doctrine as to which our review is de novo. O'Donnell v. Boggs, 611 F.3d 50, 53 (1st Cir. 2010). The dismissal of the federal

---

[2]Cavallaro v. UMass Mem'l Health Care Inc., No. 09-40152, 2011 WL 2295023 (D. Mass. June 8, 2011). Additional claims asserted under the Racketeer Influenced and Corrupt Organizations Act ("RICO") were dismissed by the district court but are not pursued by plaintiffs on this appeal.

-4-

action rested on a judgment call as to which the standard of review, given the circumstances, does not fit neatly into one category.

No. 11-1073 (State Law Claims). The original state complaint alleged thirteen counts that may be grouped as follows:

-violation of the Massachusetts Payment of Wages Act, Mass. Gen. Laws ch. 149, § 148 (Count 1);

-violation of the overtime provision of the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, § 1A (Count 2);

-breach of contract or implied contract (Counts 3, 4 and 5);

-money had and received; quantum meruit/unjust enrichment (Counts 6 and 7);

-fraud and conversion (Counts 8 and 12);

-negligent misrepresentation (Count 9);

-equitable and promissory estoppel (Counts 10 and 11); and

-failure to keep accurate records (Count 13).

Counts 10 and 11 (resting on estoppel theories) were dismissed by stipulation but, to avoid confusion, our discussion below retains the original numbering.

In removing the case to federal court, UMass argued that section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "completely preempts" plaintiffs' state law claims, thereby transmuting the state law claims into federal claims and permitting removal under federal question doctrine, 28 U.S.C.

§§ 1331, 1441(b). UMass then moved to dismiss all claims with prejudice on the ground that they implicated CBAs and plaintiffs had failed to exhaust CBA remedies, while Cavallaro and Herman moved to remand to state court.

The district court declined to remand and ultimately dismissed all of the claims, save for Count 2, for failure to exhaust CBA remedies required by the relevant CBA. As for Count 2, the court did not determine whether the claim would be barred on this basis because it found that no such claim existed here in light of the statute's "hospital" exemption and, exercising supplemental jurisdiction, it dismissed that claim on the merits. This appeal followed.

Plaintiffs say that the claims were all based on state law and that, in allowing removal, the district court misunderstood the distinction between "complete preemption," which authorizes removal, and "defensive preemption," which merely blocks, or diverts to CBA remedies, a claim otherwise properly in federal court. As we will see, the complete preemption concept has a core meaning which suffices to establish jurisdiction over the case in the district court, although the concept's full present contours pose uncertainties that complicate the disposition of the claims once in federal court.

Removal is authorized for "[a]ny civil action of which the district courts have original jurisdiction founded on a claim

or right arising under the Constitution, treaties or laws of the United States."  28 U.S.C. § 1441(b).  Here, all of the claims set forth in the state court complaint purport to arise under state law; and this, under the well-pleaded complaint rule, would ordinarily bar removal, Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9–11 (1983), were it not for the complete preemption exception.  That concept, exemplified by Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560 (1968), is now firmly embedded.  See note 4, below.

"Complete preemption," as distinct from the more familiar concept of defensive preemption,[3] applies where a purported state claim either is re-characterized as a federal claim or--and here, Supreme Court doctrine has become unstable--is otherwise so related to federal law as to permit the removal.  The Court refined the concept primarily in labor cases, extending by analogy to a limited number of other federal statutes.[4]  The most familiar example is a

---

[3]Ordinary, or defensive, preemption is (like "jurisdiction") a loose concept used variously by the courts to refer to certain defenses to a claim, of which a classic example is a state claim foreclosed because its assertion conflicts with a federal statute or falls within a field preempted by federal law.  Aetna Health Inc. v. Davila, 542 U.S. 200, 207-09 (2004).

[4]The principal cases in the labor context include, in addition to Avco:  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985); Caterpillar Inc. v. Williams, 482 U.S. 386 (1987); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988); and Livadas v. Bradshaw, 512 U.S. 107 (1994).  The concept has also been put to work in a few other instances.  E.g., Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003) (National Bank Act); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (ERISA).

claim brought under state contract law to enforce a CBA subject to federal jurisdiction under section 301 of the LMRA. E.g., Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 102-04 (1962); see also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-13 (1985).

The complete preemption doctrine grew out of the Court's holding that (1) section 301 required the federal courts to create a body of federal common law for CBAs affecting interstate commerce, Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456-57 (1957); (2) this body displaced state contract law, id.; and (3) by this alchemy the purported state claim became a federal contract claim allowing removal as one within the federal "arising under" jurisdiction under section 1441(b), Avco, 390 U.S. at 560.

Partly to protect the use of arbitration and grievance procedures common to CBAs, the Supreme Court declined to limit complete preemption to contract claims eo nomine, Lueck, 471 U.S. at 211, but explicitly extended complete preemption to state law claims "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement." Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987). But, as the Court has encountered new variations, it has imposed limits that it has never fully integrated into a single body of doctrine. Livadas, 512 U.S. at 124 n.18 (noting confusion in the lower courts).

Despite such confusion, plaintiffs' main attack on removal in this case plainly fails, for it rests on the proposition that none of the claims asserted in the complaint are labor-contract claims. But the short answer is the Lueck decision rejected this limitation, explicitly finding a state tort claim for bad faith conduct in relation to a CBA preempted because it depended for its substance at least in part upon interpretation of a CBA; the tort was a distinct claim but its viability depended in some measure on the substance of the CBA. Lueck, 471 U.S. at 219, 220-21.

Several of plaintiffs' claims under state common law doctrines in this case similarly depend upon analysis of the terms of the CBA. Claims for money had and received, quantum meruit/unjust enrichment, and conversion all rest at bottom on the notion that plaintiffs have not been paid the wages they are owed; here, this depends importantly upon what the CBA provides, as we discuss more fully below, even if these amounts were in turn altered or enlarged by state statutory provisions that cannot be overridden by the CBAs.

The interrelationship of the state claims and a CBA cannot be avoided merely by refusing to identify the CBA in the complaint and citing the well pleaded complaint rule. If a plaintiff's refusal to identify a CBA controlled, removal under section 301 could always be defeated by artful pleading. BIW

Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., 132 F.3d 824, 831 (1st Cir. 1997). Here, the CBA has been invoked by defendants and its existence is not disputed by plaintiffs.

Thus, on a minimum reading of the complete preemption cases, one or more of plaintiffs' claims are removable; any such claim makes the case removable, 28 U.S.C. § 1441(c); Pueblo Int'l, Inc. v. De Cardona, 725 F.2d 823 (1st Cir. 1984); and even the claims not independently removable come within the supplemental jurisdiction of the district court, 28 U.S.C. § 1367(a). A broader reading of current complete preemption law would make more, perhaps all, of the state claims independently removable because they require for their resolution interpretation of the CBAs; but either way the district court had jurisdiction of the entire case.

When one turns from removal of the case to disposition of the claims, a different set of issues arise. Here, it is not the CBA alone but the presence, at least in this case (as in many others), of a broadly-phrased grievance and arbitration provision in the CBA. In deference to the agreed-to remedies, courts ordinarily dismiss claims falling within such provisions--namely, those intertwined with interpretation and application of the CBA--so long as relief can be provided within the CBA process. This course, however denominated (e.g., preemption, deference,

-10-

exhaustion), is also prescribed by <u>Lueck</u> and has been repeatedly followed.[5]

We have already indicated that certain of the common law claims--for money had and received, quantum meruit/unjust enrichment, and conversion--necessarily depend upon analysis of the CBA's terms; but that is also true of the other common law claims that may look less like mere surrogates for a claim to enforce the CBA itself.  Those claims in this case include claims for misstatement and claims purported to depend on contracts independent of the CBA itself.

To succeed on their fraud and negligent misrepresentation claims, plaintiffs would have to prove that their reliance on defendants' alleged fraudulent statements was reasonable.[6]  But plaintiffs, who say they were misled into thinking certain time was uncompensated, could not have <u>reasonably</u> relied on such statements without taking into account CBA provisions like those guaranteeing payment for work performed during meals, and the practices such

---

[5]<u>Haggins</u> v. <u>Verizon New England, Inc.</u>, 648 F.3d 50, 54-57 (1st Cir. 2011); <u>O'Donnell</u> v. <u>Boggs</u>, 611 F.3d 50, 54-56 (1st Cir. 2010); <u>Fant</u> v. <u>New England Power Serv. Co.</u>, 239 F.3d 8, 14-16 (1st Cir. 2001); <u>Flibotte</u> v. <u>Pa. Truck Lines, Inc.</u>, 131 F.3d 21, 27-28 (1st Cir. 1997), <u>cert. denied</u>, 523 U.S. 1123 (1998); <u>Martin</u> v. <u>Shaw's Supermarkets, Inc.</u>, 105 F.3d 40, 42-44 (1st Cir.), <u>cert. denied</u>, 522 U.S. 818 (1997); <u>Jackson</u> v. <u>Liquid Carbonic Corp.</u>, 863 F.2d 111, 118-21 (1st Cir. 1988), <u>cert. denied</u>, 490 U.S. 1107 (1989).

[6]<u>Carroll</u> v. <u>Xerox Corp.</u>, 294 F.3d 231, 243 (1st Cir. 2002) (fraud); <u>Maffei</u> v. <u>Roman Catholic Archbishop of Boston</u>, 867 N.E.2d 300, 318 (Mass. 2007), <u>cert. denied</u>, 552 U.S. 1099 (2008) (negligent misrepresentation).

-11-

provisions embody.  See Haggins v. Verizon New England, Inc., 648 F.3d 50, 54-57 (1st Cir. 2011).

Similarly, claims relying on pre-CBA employment contracts will be defended on the ground that, when the employees entered their CBA-covered positions, their earlier employment arrangements were superceded by the CBA.  In such a case, a claim based solely on the pre-CBA contract might not itself justify removal, compare Berda v. CBS Inc., 881 F.2d 20, 25 (3d Cir. 1989), cert. denied, 493 U.S. 1062 (1990), with Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997-98 (9th Cir. 1987), but would allow the CBA to be asserted defensively once the claim is otherwise in federal court. Caterpillar, 482 U.S. at 398-99 & n.13.

Because several other claims in this case unquestionably invoke complete preemption and only one is needed for removal of the entire case to federal court, only the latter question of defensive preemption remains.  And, given the need to interpret the CBA's integration provisions to resolve UMass' inevitable defense that the CBA is intended to supercede any such prior contract claim, any claim of the latter type is ultimately sufficiently intertwined with the CBA to require use of the CBA processes. Lueck, 471 U.S. at 213, 220.

The remaining claims at issue in this case are private claims based on state regulatory statutes.  Although closely related to wages, such claims--unlike those based solely on common

-12-

law theories--may not be "waivable" or "negotiable"--that is, capable of being superceded by the CBA. Livadas, 512 U.S. at 123 & n.17; Lingle, 486 U.S. at 407 n.7; see also Lueck, 471 U.S. at 212. Just which claims would be non-waivable under Supreme Court precedent is less clear but we will assume that the statutory claims asserted here would not be waivable.

But where a regulatory claim is non-waivable, the question remains whether federal labor policy favoring the CBA grievance and arbitration provision still requires resort to that route, at least initially, if the claim's resolution requires interpretation of the CBA. Lueck suggests that the answer is yes; but, the most recent Supreme Court case directly addressing statutory claims--albeit one addressing agency rather than private action--found it unnecessary to decide the defensive preemption issue because no dispute existed about the amount of wages owed-- only whether, contrary to state law, they had been paid too late. Livadas, 512 U.S. at 124-25.

The law in this realm is still evolving and it is not easy to tell in what direction the Supreme Court may go. Indeed, such overlapping regulatory/CBA problems could be handled in a variety of ways and some tensions exist in Supreme Court precedent. Notably, several Supreme Court cases indicate that, at least where federal statutory claims are concerned, an arbitration clause can waive a judicial forum for a Fair Labor Standards Act claim, 29

U.S.C. § 206 et seq., only if such waiver is "clear and unmistakable."[7]  14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 255 (2009); see also Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981).

On the other hand, at least where there is no claim that the CBA itself violates a state statute, O'Brien v. Town of Agawam, 350 F.3d 279, 285 n.12 (1st Cir. 2003), we have continued to treat state regulatory claims in the economic area as preempted where they were intertwined with the CBA and more than mere consultation of the CBA is required.  Adames v. Exec. Airlines, Inc., 258 F.3d 7, 12-16 (1st Cir. 2001); see also Vadino v. A. Valey Eng'rs, 903 F.2d 253, 266 (3d Cir. 1990).  And the Supreme Court in Livadas clearly indicated that this course has not been foreclosed by that decision.  Livadas, 512 U.S. at 124 & n.18.

Until the Supreme Court provides more guidance, the panel is bound by existing circuit precedent.  Two of the regulatory claims at issue--plaintiffs' claim under the Massachusetts Weekly Wage Act, Mass. Gen. Laws ch. 149, § 148, and the claim for failure to keep accurate records--are under Adames preempted by

---

[7]A broadly-worded arbitration clause such as one covering "any dispute concerning or arising out of the terms and/or conditions of [the CBA], or dispute involving the interpretation or application of [the CBA]" will not suffice; rather, something closer to specific enumeration of the statutory claims to be arbitrated is required.  Compare Wright v. Universal Maritime Serv. Corp., 525 U.S. 70 (1998), with 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009).  See also O'Brien v. Town of Agawam, 350 F.3d 279 (1st Cir. 2003).

-14-

entanglement with CBA interpretation.  Whether those state claims could be revived if the CBA grievance process were employed and provided a predicate for further relief is an issue that has not been briefed and on which we express no opinion.[8]

The Massachusetts Weekly Wage Act, Mass. Gen. Laws ch. 149, § 148, requires an employer to pay wages owed to an employee within a fixed period; to succeed, an employee must, among other things, prove there are wages owed.  Stanton v. Lighthouse Fin. Servs., Inc., 621 F. Supp. 2d 5, 10 (D. Mass. 2009).  Accurate records also depend on what the CBA provided as wages.  At this stage of the litigation, we cannot know the exact contours of the wage dispute and the precise CBA terms likely to require interpretation cannot be certain; but because lawsuits evolve that will be true until someone decides the merits.

But this is a very different situation than Livadas, where the wages had been paid, there was no dispute about the amount, and the claim turned on whether the wages had been timely paid under the terms of the state law.  Livadas, 512 U.S. at 124-25.  By contrast, determining what (if anything) is owed--an inevitable issue here--depends at least arguably on interpretations and applications of the CBA at issue and that approximation has to be sufficient.  Flibotte, 131 F.3d at 26 (state law claim preempted

---

[8]Cf. Livadas, 512 U.S. at 124 n.18 (citing Collyer Insulated Wire, Gulf & Western Sys. Co., 192 N.L.R.B. 837 (1971)); Vadino v. A. Valey Eng'rs, 903 F.2d 253, 266 (3d Cir. 1990).

by LMRA section 301 if it "plausibly can be said to depend upon the meaning of" or "arguably hinges upon an interpretation of" the CBA).

Plaintiffs insist that they are not raising any interpretive dispute about the CBA or the method of calculating wages, but only a factual dispute as to whether plaintiffs were paid for time spent working through meal breaks, before and after work, and during training sessions. Even so, some provisions of the CBA governing the named plaintiffs' employment will likely need to be interpreted: for example, whether certain training programs are compensable depends on the employee having made a "timely" request to attend; and compensable meal time depends upon whether a nurse remained in the "patient care area."

But more importantly, resolving the factual dispute does not resolve whether or how much wages are owed. UMass has argued that additional compensation provided by the CBA--say, premium pay above state mandatory rate, or differential pay for certain shifts--may offset any deficiency created by other uncompensated time for purposes of satisfying state minima.[9] Determining whether there are wages owed thus will require construing and applying the various "peculiarities of industry-specific wage and benefit

_____

[9]Plaintiffs admit that Massachusetts wage and hour statutes incorporate the standards of the Fair Labor Standards Act, which contemplates such offsets. See 29 U.S.C. § 207(e)(5)-(7), (h); 29 C.F.R. § 778.200, 778.202; Mullaly v. Waste Mgmt. of Mass., 895 N.E.2d 1277, 1281 (Mass. 2008).

-16-

structures" embodied in the CBA--a complicated task better-suited for an arbitrator's expertise and, regardless, which Adames already deemed a matter of interpretation requiring preemption. 258 F.3d at 13. And, of course, any claim for compensation above the state minima must be entirely dependent on the CBA.

That leaves only plaintiffs' claim under the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, § 1A, which mandates overtime pay for hours worked over 40 per week at one and a half times the employee's regular rate of pay. Whether CBA interpretation, or mere consultation, would be needed to determine the "regular rate" might be uncertain, cf. Adames, 258 F.3d at 14-15; but the district court found this claim barred by the statute's exception for employees who work "in a hospital." Mass. Gen. Laws ch. 151, § 1A(16).

This exercise of supplemental jurisdiction was proper. 28 U.S.C. § 1367(a); Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("In an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims."). The claim arises from the same nucleus of facts as the rest of plaintiffs' claims, the question is purely legal and, although perhaps novel, it is by no means complex; plaintiffs, after all, have not contested UMass' representation that they are hospital employees.

The district court also did not err in failing to remand to state court any claims of putative plaintiffs not covered by CBAs. The named plaintiffs in this case are current or former hospital employees whose employment is governed by a CBA. Any other potential class plaintiffs are not parties to the suit until plaintiffs' status is established. See Pruell v. Caritas Christi, 645 F.3d 81, 84 (1st Cir. 2011). Putative plaintiffs not covered by a CBA remain free to file a separate action.

11-1793 (Federal Claims). In No. 11-1793, plaintiffs allege UMass violated the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, and failed to keep accurate records and to credit all hours worked in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1059(a)(1), 1104(a)(1). Primarily in dispute is the FLSA claim, for which the plaintiffs had to identify an employer, show an interstate nexus, and establish under-compensation. Id. §§ 206(a), 207(a)(1).

The district court dismissed the FLSA claim on the pleadings, saying that the complaint did not identify any employer for the named plaintiffs but merely the UMass umbrella organization and specific named hospitals--none of which were identified as the immediate employer for either plaintiff. Having already allowed two other amended complaints, the district court refused to allow

-18-

an amendment for the FLSA claim or the ERISA claim, which it viewed as parallel or derivative.

Whether the complaint stated a claim without identifying the direct employer is a question of law, Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008), while the refusal to allow an amendment is reviewed for abuse of discretion. Universal Commc'n Sys., Inc., v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007). As to the latter, plaintiffs' counsel appear to have been omitting pertinent information from their complaints, possibly to prevent removal or broaden the potential class. E.g., Pruell v. Caritas Christi, No. 09-11466, 2010 WL 3789318 (D. Mass. Sept. 27, 2010), vacated in part, No. 11-1929 (1st Cir. 2012).

Here, plaintiffs say that their allegations were nevertheless sufficient because all of the UMass-affiliated entities operated as a "joint employer" or "integrated enterprise"--theories that might (or might not) extend liability beyond their direct employer. Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 197-98 (2d Cir. 2005); see also Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 770 (1st Cir. 2011). But, as the district court said, even on these theories some direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible.

Plaintiffs do not suggest they were ignorant of which hospital directly employed their two named plaintiffs, compare Cordero-Hernández v. Hernández-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006), cert. denied, 549 U.S. 1128 (2007), nor would identifying an individual employer have waived a claim that associated entities were also responsible.  A number of courts have made clear that they will not put up with game-playing omissions of plainly relevant detail,[10] and we are increasingly sympathetic to this view.

But, in this instance, the defendants themselves removed the parallel state case to federal court on the specific ground that these two employees were directly employed under a CBA by a named defendant identified by defendants themselves, and the district court accepted this allegation in sustaining the removal. Under these peculiar circumstances and with no indication of any prior abuse of the amendment process (the prior amendments were consented-to modifications reflecting developments in mediation), we think that one last amendment should be permitted, if the plaintiffs are so minded.

---

[10]See Davis v. Abington Mem'l Hosp., No. 09-5520, 2011 WL 4018106, at *4 (E.D. Pa. Sept. 8, 2011); DeSilva v. North Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 508-10 (E.D.N.Y. Mar. 16, 2011); Manning v. Boston Med. Ctr. Corp., No. 09-11463, 2011 WL 796505, at *1-*2 (D. Mass. Feb. 28, 2011); Nakahata v. New York-Presbyterian Healthcare Sys., Inc., No. 10 Civ. 2661, 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011).

The judgment in No. 11-1073 is <u>affirmed</u>; the judgment in No. 11-1793 is <u>vacated</u> and that case is <u>remanded</u> for further proceedings consistent with this decision. Each side shall bear its own costs on the appeals.

<u>It is so ordered.</u>