# United States Court of Appeals
## For the First Circuit

No. 20-1470

ANDREA ROSE,

Plaintiff, Appellant,

v.

RTN FEDERAL CREDIT UNION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Chief Judge,
Selya, Circuit Judge,
and Gelpí,* District Judge.

Raven Moeslinger, with whom Law Office of Nicholas F. Ortiz,
P.C. was on brief, for appellant.
Liam Tomas O'Connell, with whom Natalie M. Cappellazzo and
Nutter McClennen & Fish LLP were on brief, for appellee.

June 10, 2021

---

* Of the District of Puerto Rico, sitting by designation.

**SELYA**, **Circuit Judge**.  This appeal requires us to examine the jurisdictional reach of section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).  Plaintiff-appellant Andrea Rose argues that the district court applied section 301 too expansively and asks us to reverse certain of the district court's rulings favorable to her employer, defendant-appellee RTN Federal Credit Union (RTN) — rulings that flowed from the district court's assessment of section 301's broad preemptive effect.  Concluding, as we do, that the district court's application of section 301 was beyond reproof, we affirm the judgment below.

I

We start by rehearsing the relevant facts and travel of the case.  Rose has been employed by RTN as a member service representative — an hourly-wage position — since September 2014.  The position falls under the carapace of a collective bargaining agreement (the CBA) between RTN and the Office and Professional Employees International Union, AFL-CIO, Local 6 (the Union).  Rose ordinarily works forty to forty-five hours a week at RTN's branch in Hudson, Massachusetts.  She alleges, however, that RTN periodically requires her to report to its branch in Dedham, Massachusetts.  Working in Dedham extends Rose's usual commute by roughly an additional hour each way, but she alleges that she is not compensated for the extra time and expense involved in such a journey.

Chafing at this perceived inequity, Rose sued RTN in a Massachusetts state court. Her complaint asserted four separate violations of the Commonwealth's labor laws: nonpayment of earned wages, see Mass. Gen. Laws ch. 149, §§ 148, 150; nonpayment of minimum fair wages, see id. ch. 151, § 1; nonpayment of overtime, see id. ch. 151, §§ 1A, 1B; and failure to maintain proper payroll records and issue suitable pay stubs, see id. ch. 149, § 148; id. ch. 151, § 15; 454 Mass. Code Regs. 27.07(2).

All four of Rose's claims derive from a common nucleus of operative fact — her intermittent treks to and from Dedham — and a particular provision of state labor law. That provision, 454 Mass. Code Regs. 27.04(4)(b), stipulates that an employee who "regularly works at a fixed location" must be compensated for the extra time and expense involved in traveling to a location other than her "regular work site."[1] The regulation does not elaborate on the meaning of several of its component terms (such as "fixed location").

---

[1] The regulation reads:

> If an employee who regularly works at a fixed location is required to report to a location other than his or her regular work site, the employee shall be compensated for all travel time in excess of his or her ordinary travel time between home and work and shall be reimbursed for associated transportation expenses.

454 Mass. Code Regs. 27.04(4)(b).

Rose's complaint sought recovery of compensation for unpaid wages and expenses, as well as unpaid overtime (to the extent that her added travel time was in excess of a forty-hour work week). It also sought damages for RTN's alleged failure to account for her travel time and to maintain required payroll records.

RTN removed the suit to the federal district court. See 28 U.S.C. § 1441. In its notice of removal, RTN represented that Rose's claims, although articulated exclusively in state-law terms, implicated federal interests in a manner sufficient to trigger federal question jurisdiction. See 28 U.S.C. § 1331 (conferring jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States"); see also Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 17 (1st Cir. 2018). Federal question jurisdiction is, of course, a form of subject matter jurisdiction. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001); see also Prou v. United States, 199 F.3d 37, 45 (1st Cir. 1999).

To be sure, federal question jurisdiction ordinarily implies satisfaction of the well-pleaded complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). But this general rule — like most general rules —

- 4 -

admits of exceptions. A defendant may remove a case to federal court under federal question jurisdiction by virtue of complete preemption — a jurisdictional doctrine that operates when "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim.'" Id. at 393 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). Here, RTN invoked the complete preemption doctrine and removed Rose's suit on the theory that a federal statute (the LMRA) transmogrified Rose's state-law claims into federal claims.

Rose moved to remand the case, arguing that her claims "ar[ose] exclusively under state law." RTN opposed the motion and cross-moved for judgment on the pleadings. Following a hearing, the district court denied Rose's remand motion. The court concluded that "[a]djudication of Rose's claims requires interpretation of the collective bargaining agreement" and, thus, supported the premise that federal question jurisdiction existed.[2] The court reserved decision on RTN's cross-motion.

In a written rescript, the district court subsequently granted RTN's motion for judgment on the pleadings. See Rose v. RTN Fed. Credit Union, No. 19-cv-11854, slip op. (D. Mass. Dec. 9,

---

[2] The district court did not originally offer an explanation for its refusal to remand but explicated its reasoning at a later time.

2019) (unpublished). The court noted the CBA's directive that "any differences," if not otherwise settled between RTN and Union representatives, would have to be resolved by arbitration. Id. at 2. Since the CBA's broadly worded grievance provision encompassed Rose's claims, Rose was bound to its terms. See id. at 3; see also Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965) ("[F]ederal labor policy requires that individual employees wishing to assert contract grievances must [at least] attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." (emphasis omitted)). And because Rose had made no attempt to arbitrate her claims, her suit could not proceed. See Rose, slip op. at 2-3.

The court then administratively closed the case, presumably to allow Rose an opportunity to grieve and arbitrate her claims. Rose declined this opportunity. Instead, she later urged the court to enter judgment in RTN's favor, thus allowing her to perfect this appeal.

II

We afford de novo review both to the district court's denial of the motion to remand and to its subsequent entry of judgment on the pleadings. See Rueli v. Baystate Health, Inc., 835 F.3d 53, 62 (1st Cir. 2016). In this instance, our review takes place against the background principle that section 301 of the LMRA, see 29 U.S.C. § 185(a), completely preempts any state-

law cause of action "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement." Caterpillar, 482 U.S. at 394; see Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 23 (1983).

A

Before us, Rose's chief contention is that her state-law claims can and should be adjudicated independently of the CBA. In her view, her claims do not "depend on a court interpreting any of [the CBA's] provisions" and, thus, complete preemption is inapposite. We do not agree.

It is by now apodictic that the LMRA thoroughly occupies the field of labor contract disputes. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985) (concluding that any "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law"). Even so, the LMRA's reach is not unlimited: "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by [section] 301." Id. State laws that establish substantive rights, obligations, or prohibitions independent of any labor contract do not implicate the same sort of federal questions. See id. at 211-12. In the last analysis, LMRA preemption of a given state-law claim depends

- 7 -

upon whether the claim's adjudication appears to be "inextricably intertwined with consideration of the terms of [a] labor contract." Id. at 213; see Cavallaro v. UMass Memorial Healthcare, Inc., 678 F.3d 1, 7 (1st Cir. 2012).

When the removal of a case to a federal court is challenged, the removing party normally "bears the burden of persuasion vis-à-vis the existence of federal jurisdiction." BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers, 132 F.3d 824, 831 (1st Cir. 1997). That burden, though, is not necessarily a heavy one. This is such a case: a state-law claim may escape LMRA preemption only if it requires no more than "bare" consultation of a CBA, without dispute as to "the meaning of [any] contract terms." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). If a claim plausibly requires interpretation of one or more provisions of a CBA, it comes within the LMRA's preemptive sweep. See Adames v. Executive Airlines, Inc., 258 F.3d 7, 11-12 (1st Cir. 2001).

The border between interpretation and bare consultation can be hazy and, therefore, "difficult to plot." Lawless, 894 F.3d at 18 (citing Livadas, 512 U.S. at 124 n.18). This case, however, does not closely approach the border: on their face, Rose's state-law claims require more than bare consultation of the CBA. They substantially depend on construing the terms of the

agreement (the CBA) that RTN and the Union negotiated. We explain briefly.

Importantly, Massachusetts case law is sparse with respect to the portion of the regulation upon which Rose relies (subsection 27.04(4)(b)). The only pertinent reported case is Taggart v. Town of Wakefield, 938 N.E.2d 897 (Mass. App. Ct. 2010). That decision makes pellucid that applying the regulation is a fact-sensitive exercise, especially because the regulation itself leaves critical terms undefined. See id. at 900. For instance, the Taggart court noted that the term "fixed location," as used in the regulation, "concerns the nature of the employee's present work site at the time the employee is required to report to that site." Id. A site that "change[s] from day to day, or after a short period of time . . . [cannot] be considered 'fixed.'" Id. at 900-01. So, too, an employee reports to a "fixed" location to the extent that her destination is "'stationary' and 'not subject to change'" for the duration of her reporting period, even if the assignment itself is a temporary one. Id. at 901. What is more, "the relevance of the length of the assignment will depend significantly on the industry to which it is being applied." Id. at 900.

In the case at hand, the fact-sensitive nature of the inquiry counsels persuasively in favor of analyzing the terms of the CBA. It is not clear how often RTN requires Rose to report to

Dedham, how long her assignments to that site last, or under what circumstances those assignments arise. The pertinent CBA provisions, when analyzed, may shed needed light on these subjects. For example, those assignments may or may not fall within the CBA's express provision governing "temporary transfers," which states:

> When, in the case of a temporary situation, two (2) weeks or less, management shall have the right to select the employee to be transferred from the selected Branch Office. Without limiting managements' [sic] right to make the transfer decision, [RTN] agrees that seniority of employees will be taken into consideration at the time of transfer. Temporary transfers of two (2) or more weeks shall be offered at the appropriate branch office to volunteers first. If there are no volunteers, the least senior person the appropriate classification shall be transferred.

And Rose's eligibility for benefits under 454 Mass. Code Reg. 27.04(4)(b) may well depend upon how this provision is interpreted. Cf. Taggart, 938 N.E.2d at 901-02 (concluding that plaintiffs were ineligible for added travel compensation where CBA anticipated a temporary assignment).

That Rose's state-law claims require interpretation of the CBA's temporary transfer provision suffices to ground the application of LMRA preemption.[3] After all, "[f]ederal subject-

---

[3] Although the district court did not specifically mention the temporary transfer provision, we may affirm the court's judgment "for any valid reason that finds support in the record."

- 10 -

matter jurisdiction exists as long as—at the time of removal—there was a seemingly valid or genuine argument that adjudication of the plaintiff's claim would require construction of the CBA." Lawless, 894 F.3d at 18.  So it is here.

If more were needed — and we do not believe that it is — we have left no doubt that any claim that entails a court "determining what (if anything) is owed" to an employee who is within a bargaining unit will almost always "depend[] at least arguably on interpretations and applications of the CBA at issue." Cavallaro, 678 F.3d at 8.  In this case, we think it more than arguable — indeed, plain — that adjudicating Rose's state-law wage claims will "require construing and applying the various 'peculiarities of industry-specific wage and benefit structures' embodied in the CBA." Id. (quoting Adames, 258 F.3d at 13).  Given that the CBA adds qualifications to wage rates in light of a variety of factors and also adds qualifications to when and how overtime is to be computed, the need for such interpretations seems unavoidable.  Provisions such as those governing "hours of work," "premium time," "overtime," and "classification and wages" will have to be analyzed.  And Rose's record-keeping claim exists downstream of these provisions because "[a]ccurate records . . . depend on what the CBA provided as wages." Id.

---

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 10 (1st Cir. 2000).

Rose resists this conclusion. She relies upon Livadas, where the Supreme Court held that an employee's state-law claim, through which she sought to charge her employer for late payment of wages owed upon discharge, did not require interpretation of a CBA. See 512 U.S. at 124-25. But she is comparing cantaloupes with coconuts. In Livadas, there was no dispute "over the amount of the penalty to which [the employee] would be entitled," and the case was susceptible to resolution simply by consulting a calendar (rather than the CBA). Id. at 125.

This case, by contrast, is more analogous to Adames. There, the plaintiffs (flight attendants) sought relief under Puerto Rico law for, among other things, uncompensated work time, overtime, meal periods, and sick leave. See 258 F.3d at 10. We held that the merits of the attendants' claims substantially depended on interpreting the CBA between their union and Executive Airlines (their employer). See id. at 13-16. The attendants' suit required the court to go beyond mere reference to the CBA in order to lend meaning to ambiguous state-law terms (e.g., "company policy"), to gauge how different CBA provisions impacted the accrual of work hours and benefits within a fixed period, and to ascertain the attendants' "regular" pay rate for the purposes of calculating relief owed. Id.

As in Adames, Rose's claims likewise demand that a court assess what blocs of her time were compensable under the CBA, and

at what rate.  Rose tries to frame these questions as susceptible to straightforward resolution, suggesting (for example) that determining the overtime compensation due to her would require no more than multiplying her extra commuting time by time-and-one-half at her regular rate of pay.[4]  But determining Rose's regular rate of pay and the extent to which the commuting hours are overtime hours requires interpretation of various provisions of the CBA.  Compare id. at 16 (finding claims preempted when CBA interpretation was necessary to determine whether a claim's "factual predicates" give rise to liability), with Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 328 (1st Cir. 2016) (declining to find claim preempted when liability existed "entirely independent of any CBA terms").  Thus, Rose's wage claims depend "upon what the CBA provides [with respect to wages] . . . even if these amounts were in turn altered or enlarged by state statutory provisions."  Cavallaro, 678 F.3d at 5.

B

Rose has a fallback position, which focuses on the CBA's grievance provision.[5]  She notes that the district court ruled that

_____

[4] Rose's very framing of the question sends up a red flag. The case law is littered with admonitions that artful pleading of facts cannot be employed as a means of avoiding LMRA preemption. See, e.g., BIW Deceived, 132 F.3d at 831; Oglesby v. RCA Corp., 752 F.2d 272, 277-78 (7th Cir. 1985).

[5] Rose did not advance this line of argument before the district court.  But RTN, though noting that the district court said that this line of argument had not been raised, has not asked

- 13 -

this provision bound her to pursue her claims through arbitration. See Rose, slip op. at 2-3. That ruling was in error, she contends, because the grievance provision neither encompasses her claims nor offers her any responsive remedy. This contention lacks force.

We agree that, as a general matter, a plaintiff is not bound to arbitrate statutory claims that are wholly separate and apart from CBA-related rights and obligations. See, e.g., O'Brien v. Town of Agawam, 350 F.3d 279, 284-85 (1st Cir. 2003). Here, however, Rose's claims engender analysis and interpretation of the CBA, see text supra, thereby placing them squarely within the maw of the broadly worded grievance provision.[6] See Allis-Chalmers, 471 U.S. at 220-21; Rueli, 835 F.3d at 59-60.

Striking from another angle, Rose describes arbitration as ill-suited to afford her relief because the process "only appl[ies] to 'any differences as to the interpretation of the [CBA]' . . . [and] the CBA does not contain a provision Rose could invoke in order to recover wages and expenses due under the

---

us to hold that the line of argument is foreclosed by waiver. See Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."). Given this curious procedural posture, we elect to meet the argument head on.

[6] The grievance provision is contained in Article XXIX of the CBA. It applies to any dispute between RTN and an employee within the bargaining unit that involves "differences as to the interpretation of the [CBA] . . . ."

Massachusetts travel time regulations." This boils down to a plaint that arbitration offers Rose no suitable remedy. Such a plaint reflects an overly "casuistic reading of the contract [that] cannot be accepted." Republic Steel, 379 U.S. at 659. Arbitrators traditionally enjoy wide latitude to fashion solutions to problems, and that latitude is especially appropriate in cases — like this one — in which "[t]he draftsmen [of a CBA] may never have thought of what specific remedy should be awarded to meet a particular contingency." Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960).

That ends this aspect of the matter. We hold that this case comes within the jurisdictional reach of the LMRA and that the district court did not err either in denying Rose's motion to remand or in granting judgment on the pleadings for RTN.

III

We need go no further. For the reasons elucidated above, the judgment of the district court is


**Affirmed**.