THOMPSON, Circuit Judge, dissenting. I disagree with the result reached by my colleagues in the majority, and so I write separately to explain why I believe the district court abused its discretion when it denied plaintiffs’ motion for leave to amend the complaint.[13] I am well aware that we afford the district court very deferential abuse-of-discretion review when it comes to motions for leave to amend. But Federal Rule of Civil Procedure 15 reflects a liberal standard for motions to amend, see Torres-Alamo v. Puerto Rico, 502 F.3d 20, 25 (1st Cir. 2007), one that requires the court to “freely give leave when justice so requires,” Fed. R. Civ. P. 15(a)(2), and “this mandate is to be heeded,” Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (citing 3 Moore, Federal Practice §§ 15.08, 15.10 (2d ed. 1948)). First, some context, because the moment at which the relevant procedural history of this case played out is critical. The complaint was filed in 2009, in the wake of Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 566 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), both of which rejected the sixty-year-old standard set forth in Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (explaining that pleadings need only “give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests” to survive a motion to dismiss), and which also injected uncertainty into the standard for reviewing complaints.[14] In the two years that followed plaintiffs’ 2009 complaint filing (leading up to plaintiffs’ eventual motion to amend), how the Supreme Court’s new pleadings plausibility test should be applied was in flux. During that time, what was clear was that the Court had infused the standard with some subjectivity, and application of the new standard at times appeared to be at the mercy of each different lower court judge and his or her personal perspective, experience, and common sense. See Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (“Determining whether a complaint states a plausible claim for relief will .. be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.”).[15] Against this backdrop, the complaint in this case inevitably would face some adversity. Next, let’s move to the moment when plaintiffs were convinced it was time to move to amend: June 2011. This turning point came courtesy of Cavallaro v. UMass Mem’l Health Care Inc., No. 09-40152-FDS, 2011 WL 2295023 (D. Mass. June 8, 2011), vacated, 678 F.3d 1 (1st Cir. 2012), issued the day before the status conference. The district court there, in an about-face, dismissed (with prejudice) claims very similar to those in the complaint at issue here. But understand that, unlike here, those plaintiffs already had been afforded multiple opportunities to amend the complaint. Nonetheless, this Cavallaro dismissal served as the impetus for plaintiffs’ June 9, 2011 oral motion. Plus, as it turns out, this court on appeal decided the Ca-vallaro plaintiffs were entitled to yet further amendment. Cavallaro, 678 F.3d at 10 (concluding that there had been no “prior abuse of the amendment process,” and “one last amendment should be permitted, if the plaintiffs are so minded”). The majority explains that “any adequate reason apparent from the record” will support the district court’s denial of the motion to amend. Universal Commc’n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007) (quoting Resolution Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). Five reasons, to be taken cumulatively, are offered: (1) defendants’ April 1, 2011 letter made plaintiffs “fully aware” of the complaint’s potential defects, and other courts had found the complaint lacking in specificity; (2) plaintiffs told the district court it would have been “very easy” to correct the complaint; (3) plaintiffs delayed from April to June before bringing up the subject of amendment; (4) plaintiffs exploited the delay in moving to amend; and (5) plaintiffs ignored an express offer from the district court to file a formal motion to amend. Not only do I not see these as adequate reasons, even in the aggregate, but also I see some of them as mischaracterizations of the record, this case, and our case law. I take each in turn. Before I do, I pause to emphasize that the “adequate reason” here shouldn’t be just any conceivable reason, but rather the reason must fall within parameters described by our Supreme Court: In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be ‘freely given.’ Foman, 371 U.S. at 182, 83 S.Ct. 227 (emphasis added). I read this to mean that our high court expects the denial of a motion to amend to be supported by one of these reasons or something akin to these reasons. Otherwise, “as the rules require,” leave to amend is to be “freely given.” Id. Onward. 1. The import of defendants’ April 1, 2011 letter and other courts’ decisions The majority writes that plaintiffs were aware of the defects in their complaint because of the April letter sent by defendants, and other courts found problems with the complaint as well. A few points about this, starting with the April letter. According to the majority, defendants demanded that the complaint’s defects be corrected. True: The letter was a take-it- or-leave-it, unequivocal demand' that plaintiffs amend some aspects of the complaint and, importantly, dismiss other pled causes of action with prejudice.[16] But such a demand by defendants does not compel plaintiffs to address the perceived defects when, upon their own independent evaluation of their pleadings and the moving-target case law, they genuinely and in good faith disagreed with defendants’ position. The majority points out that multiple district courts took issue with'the complaint, but, critically, no appellate court had yet weighed in (more on that below). Meanwhile, I am unable to find, and the majority does not point to, any case law suggesting that one side in litigation can or should be compelled to do what the other side has suggested (in this case, kowtow to the demands in defendants’ letter and immediately set to work on crafting an amended complaint) where clear and binding precedent is not in place and where reasonable legal minds could differ. And I certainly see-nothing to support the notion that a side presumably proceeding in good faith can later be punished for -not doing what the other side demanded. Similarly, I can find no legal support for the notion that one side can or should be held to some sort of higher notice because the other side flagged some perceived issues. The majority’s reliance on this letter imbues the letter with a heightened importance not supported by our jurisprudence, and I fear it sends the wrong signal to litigants who may be on the ultimately losing end of a validly contested legal dispute. - Moreover, I find nothing in the record to suggest plaintiffs did not have a good faith basis to believe their complaint was viable as drafted, particularly since there was no appellate authority from any circuit opining as to whether the complaint was, in fact, sufficienjt. Plaintiffs, in defending their own legal arguments rather than adopting those of their adversaries, did not act unreasonably. On to the majority’s other reason in support of the denial of leave to amend: Other courts were taking issue with this complaint. Yes,‘some district courts had problems with the complaint. Others did not: Obviously presumed by some named defendants to be adequate, the complaint went entirely uncontested in some of the hospital compensation cases. See, e.g., Woolfson v. Caregroup, Inc., No. 1:09-cv-11464, 2010 WL 10063268 (D. Mass. Sept. 13, 2010); Meyers v. Crouse Health Sys., Inc., 274 F.R.D. 404 (N.D.N.Y. 2011); Hamelin v. Faxton-St. Luke’s Healthcare, 274 F.R.D. 386 (N.D.N.Y. 2011); see also Pruell v. Caritas Christi (Pruell II), 678 F.3d 10, 14. & n.2 (1st Cir. 2012) (noting that hot all courts “have expressed their displeasure and found the complaints inadequate”). Bear with me while I develop this point. Even in the cases where the complaint was contested and amendment was sought, the results were not dismissals without any opportunity to amend. For example, in another one of these hospital compensation cases decided by us, Pruell II, we took a lenient approach that aligned with the spirit of our rules of amendment. The story goes-as follows: The plaintiffs’ complaint was dismissed, but with leave to amend, Pruell v. Caritas Christi, No. 09-11466-GAO, 2010 WL 3789318 (D. Mass. Sept. 27, 2010); thereafter, the amended complaint was deemed insufficient, and the complaint was 'again dismissed, this time without leave to amend, Pruell v. Caritas Christi, No. 09-11466-GAO, 2011 WL 10977304 (D. Mass. July 13, 2011). But oh appeal, we cut the plaintiffs a good deal of slack because, as I have already discussed, the post-Twombly and -Iqbal timeframe in question (the same timeframe at issue in the instant case) presented a hot mess -for litigants trying to navigate it: "The precedents on pleading specificity [we]re in a period of transition, and precise rules [would] always be elusive because of the great range and variations in causes of action, fact-patterns and attendant circumstances.” Pruell II, 678 F.3d at 15. “[S]ome latitude,” we said, “has to be allowed where a claim looks plausible based on what is known.” Id. Here, .the majority departs from the Pruell II model—and it does so in a case where, unlike Pruell II with its multiple amendment requests, plaintiffs sought leave to amend only one time. Aware of the contested defects or not, plaintiffs should have been afforded leave to amend, just as leave to amend should have been allowed in Pruell II (hence our remand for that purpose).[17] Defendants’ letter and some courts coming down on the complaint do not negate the fact that Pruell II shows us that the specificity. in these complaints remained a moving target, and it wasn’t totally clear yet what worked and what didn’t. Id. at 14-15. And,, what’s more, I do not think this reason is one (or similar to one) that was contemplated by the Foman Court when it laid out circumstances in which it would be appropriate to deny leave rather than freely grant ⅝, “as the rules require.” Foman, 371 U.S. at 182, 83 S.Ct. 227. 2. Ease with which plaintiffs could provide more specificity The majority’s next reason in support of the denial of leave to amend is that plaintiffs indicated at the status conference in June,2011 that it would be “very easy” to eliminate the complaint’s defects. I am not persuaded by this either. As an initial matter, let me once again say that plaintiffs had; they' believed, a good faith basis for not seeking amendment prior to this conference, and they planned to stick to their guns and their own legal arguments in support of the complaint’s sufficiency. That changed when Cavallaro came along the very day before that conference. Context is important.[18] Here, plaintiffs’ counsel did indeed explain that it would be “very easy” to remedy the complaint—but he specifically said he could easily remedy “[a]ll of the questions raised by the Court there.” (Emphasis added.) The “there” he refers to is the decision from Judge Saylor (Cavallaro) that came out the day before. So, in context, it became “easy” only after the Cavallaro decision, which triggered plaintiffs’ decision to move to amend after all. Lastly, as with the previous reason offered in support of the denial of leave to amend, I do not think the ultimate ease with which plaintiffs may have been able to fix the complaint falls under what the Foman Court had in mind when it spoke of denying leave to amend for “justifying reasons.” 371 U.S. at 182, 83 S.Ct. 227. 3. Plaintiffs waited until June to discuss amendment with the district court, resulting in prejudice Another reason the majority offers is that plaintiffs failed to file a motion to amend “with some modicum of dispatch,” instead delaying, or “waiting until June to even broach the subject directly with the court.” The majority elaborates: Plaintiffs’ failure to bring up the subject of amendment, even though they were “put on notice of their complaint’s deficiencies by April 1, 2011,” was a “delay that prejudiced defendants and the district court.” I disagree. Remember that not just any delay will do on this topic—the delay must be undue. Foman, 371 U.S. at 182, 83 S.Ct. 227. But in any event, in my view, the subject two-month period falls short of constituting delay, undue or otherwise. Cf. Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 34 (1st Cir. 2016) (reasoning that plaintiffs “listless approach toward amend-mg”—waiting 13 months—constituted undue delay); Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 538 (1st Cir. 2011) (finding undue delay when motion to amend was filed “nearly a year after” a motion to dismiss was filed); see also Torres-Álamo, 502 F.3d at 25-26 (reversing district court’s denial of a motion to amend because the motion was filed less than two months after the answer and six months after the initial complaint). Besides, even assuming it was an undue delay, plaintiffs have a supportable explanation for it: They disagreed with the arguments advanced in defendants’ April letter, they wanted to stick to their own legal arguments, and they thought it would be premature to amend when no appellate court had affirmed any district court’s take on the complaint. And let’s take another step back. At the risk of sounding like a broken record, it is important to recall and emphasize the spirit and policy behind our rules of amendment. Not only is liberality favored for good reason,[19] but also we must bear in mind that a fundamental reason we take issue with protracted delay in filing a motion to amend is the “attendant burdens on the opponent and the court” that it can create. Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (per curiam) (quoting Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004)).[20] The majority says the two-month “delay” in seeking amendment prejudiced defendants and the district court, so let’s talk prejudice and burdens. I cannot see the prejudicial effect suffered by defendants— it was plaintiffs’ first request to amend, and the actual litigation of this case was in its infancy (with settlement negotiations having broken down only a few months earlier, discovery wasn’t even underway, nor was trial even a glimmer in anyone’s eye). And it’s not as though defendants can say they didn’t know what plaintiffs’ claims would be; not only had they spent ample time discussing the claims during mediation, but also, as defendants are quick to point out, these same compensation issues were being delved into all over the country, and defense counsel represented many of the defendant-entities in those suits. The majority writes that defendants’ burden is that they had to file a twenty-page motion for judgment on the pleadings and they were forced to file many documents in support of that motion. I find no precedent which supports the proposition that when a party opponent takes a contrary, but defensible, legal position which generates the filing of a single dispositive motion, that such amounts to prejudice or the kind of burden that would justify denial of leave to amend. This is litigation, plain and simple—it is not the kind of unwarranted “attendant burden[] on the opponent” that our case law disfavors. Somascan, Inc., 714 F.3d at 64. As for the prejudicial effect on the court, I am similarly at a loss. The majority writes that the district court had to read and consider the motion for judgment on the pleadings and “was preparing to rule on [that motion] by the time of the scheduling conference.”[21] First, and once again, that is the nature of litigation and what judges are called upon (and paid a decent salary) to do. Judges review motions filed and, indeed, eventually rule on those motions. Second, there is no (zilch) record support for the majority’s assumption that the district court had already taken a deep dive into the motion for judgment on the pleadings (as of the date of the June status conference, no hearing date had been set, and, all told, the hearing would not take place for another two months),[22] nor is there evidence that the court was somehow already “preparing to rule” on a motion that had not even been scheduled for hearing. This rank speculation is not the stuff of burden or prejudice. 4. Exploitation of the “delay” Next, my colleagues take issue with what they characterize as plaintiffs’ exploitation of their own supposed delay, and this is offered as the penultimate reason supporting the conclusion that there was no abuse of discretion by the district court judge. I don’t see things the same way. The majority begins its explication by writing “when asked point' blank why they did not do what they say they could 'have done upon receiving defense counsel’s letter, plaintiffs’ counsel gave the district court an explanation that was simply untrue.” A quick read of the transcript, however, puts things in context and shows this isn’t quite how that scene played out: THE COURT: But you were afforded an opportunity by the defendants to tidy up your pleadings and afforded that opportunity in April, and so now you tell me when I set it down for hearing for judgment on the pleadings that you want to be able to take my temperature on the judgment on the pleadings and then file another complaint? MR. SOLOMON: We didn’t feel that we would be in a position with the Court, the defendants were asking us to do that. We didn’t believe that the Court would entertain an amended complaint while the motion on the pleadings had been fully briefed. Describing the district court’s inquiry as a point-blank question as to why plaintiffs didn’t do what defendants’ letter said to is riiisléading. The question is far less direct than that, as the above excerpt shows. But the majority’s treatment and view of this exchange actually clears up some confusion: The majority suggests plaintiffs’ answer here is untrue, but that is because the majority frames the court’s question differently than it was actually put to plaintiffs’ counsel at the conference. By my reading, treating the “tidy up your pleadings” phrase as an introductory statement, not a question (because it isn’t a question on its own), counsel believed he was answering the second portion of the district court judge’s statement, which constituted the court’s actual inquiry. It is clear to me that counsel’s point—that he worried the court wouldn’t look favorably on a motion to amend while a dispositive motion was pending—is fair, particularly "since defendants actually filed their dispositive motion in April. It simply is riot an incorrect' response, 'as the riiajority says. The majority also says the district court “concluded] that plaintiffs . intentionally delayed in an effort to force the defendants to brief a motion and the court to do the work of deciding the motion.” But defendants filed their motion only seven days after plaintiffs notified them they would not be amending their pleading, and defendants’ ten-page, single-spaced April letter bears a resemblance to the dispositive motion defendants filed. It does not take a seasoned litigator to understand that defendants’ April letter was, in large part, their motion. Moreover, defendants renewed arguments made in their earlier motion to dismiss as to the RICO claim. So plaintiffs’ supposed “delay” in seeking amendment after rejecting the demands in defendants’ letter did not force defendants to reinvent any particular wheel or flesh out brand new arguments when briefing the motion—much of that work was already done. And even if this was not true, I spy nothing in the record (because there is nothing) which demonstrates that any such delay (once again, even assuming a two-month delay from the April letter to the court conference is the kind of delay our case law condemns in this context) was intentionally created, nor that it was created specifically with an eye towards later taking advantage of it. The majority paints a picture in which plaintiffs “force[d]” defendants to file a motion and “force[d]” the court to do the work of deciding it, all while knowing they viewed their complaint “as a risk-free trial balloon.” Again, this is an unfair mischar-acterization of the record in this case. Plaintiffs said many times they believed their own legal arguments in support of the sufficiency of their complaint had merit, and that it was, up to a time, premature to amend the complaint. Plus, the majority conveniently ignores the fact that plaintiffs filed a twenty-page brief vigorously opposing defendants’ dispositive motion substantively, as a matter of law, and they did this because they believed—at the time—they had viable legal footing for that position. If, as the majority seems to believe, plaintiffs had this nefarious “trial balloon” plan in place, they would not have gone to the trouble of drafting and filing a well-argued (though perhaps wrong in the end) substantive opposition. My final point on this fourth offered reason responds to my colleagues’ observation that the length of the delay (the undue delay reason Foman laid out) is less the problem than the perceived (but, in my view, unsupported) manner in which plaintiffs “seem to have exploited” that delay,[23] It’s unclear to me what the exploitation is, but in any event, I do not share the majority’s impression of plaintiffs and I see no such exploitation. Moreover, any supposed exploitation of (a mere two-month) delay is not delay itself, and it .does not fall under the Foman Court’s vision of undue delay as an example of a requisite “justifying reason.” 371 U.S. at 182, 83 S.Ct. 227. 5. Plaintiffs ignored an express offer from the district court to file a formal motion to amend As far as reasons to support the denial of the motion to amend go, this one similarly falls short of the “justifying reasons” that would do the trick. Here’s what happened. The district court judge repeatedly indicated that he would not permit amendment. At the close of the conference, the district court judge stated, “Well, I haven’t had a pleading submitted to me, but I’m telling you ahead of time that having had this in front of me, that’s what I’m going to do. Now if you want to test it by filing a new pleading, I suppose you can. That’s up to you.” So when plaintiffs were told, essentially, that “a written motion will be denied just like your oral motion has been denied, but sure, go ahead and file it if you want,” little wonder they saw that route as futile and/or unnecessary. Plaintiffs took their cue from these statements and repeated denials, in conjunction with the court’s same-day written denial on the docket. They did not file a written motion, clearly satisfied that their (validly made, they believed) motion had been flatly denied, any future filing had been preemptively denied, and any written motion would be, at best, futile or a waste of time and client money, or, at worst, Rule 11 sanctionable. Seems to me plaintiffs opting not to chart that course is understandable; it is not a reason to affirm the denial of their motion for leave to amend. Conclusion Given that I see the majority’s outcome as completely at odds with our case law and the spirit of our rules, I respectfully, but emphatically, dissent. APPENDIX APPENDIX [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] [[Image here]] . The majority assumes without deciding that the other big issue in this case—whether the oral motion for leave to amend, was valid and therefore reviewable—is indeed reviewable, But I believe this question deserves a decision on its merits. We have said that “[tjhere may be exceptional circumstances in which a request to amend will become the functional equivalent of a motion to amend.” Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 327 (1st Cir. 2008) (examining and finding insufficient the undeveloped request plaintiffs had made in their written opposition to a dispositive motion). Here, this motion to amend was valid: Plaintiffs’ counsel engaged in a lengthy, on-the-record back-and-forth with the district court when he orally moved to amend the complaint; defense counsel had an opportunity to respond; the court's re-peatéd oral denial of leave to amend signaled that it considered, assessed, and rejected the motion; and the district court’s written denial of the motion for leave to amend appeared on the docket that very same day. And so, I believe this case presents just the sort of "exceptional circumstances” that make plaintiffs’ motion, if not proper all on its own, "the functional equivalent” of a proper motion, and our decision should reflect that conclusion. See id, . It’s 2018, and 2009-11 seems an age ago. In this case, we mustn’t forget that the issues were happening between 2009 and 2011, not years later. The fourteen-plus months between the hearing on the motion for judgment on the pleadings (August 3, 2011) and the electronic order granting the motion for judgment on the pleadings (September 30, 2012), combined with the passage of nearly four years between the September 30, 2012, electronic order and the issuance of the explanatory memorandum and order (July 21, 2016) tells the story of how we wound up so far removed from 2011. . Motions to dismiss complaints swept the nation during this time; notably higher filing rates post-“Twiqbal” crossed disciplines and cluttered judges’ desks. See, e.g., Joe S. Cecil et al., Fed. Judicial Ctr., Motions to Dismiss for Failure to State a Claim after Iqbal.’ Report to the Judicial Conference Advisory Committee on Civil Rules 8, 9 (Mar. 2011), available at http://www.uscourts.gov/sites/default/files/ motioniqbaLl.pdf (recording a marked increased rate of challenges to the sufficiency of complaints in the post-Iqbal period (2009-2010) as opposed to the pre-Twombly period (2005-2006)); see also Jonah B. Gelbach, Note, Locking the Doors to Discovery? Assessing the Effects of Twombly and Iqbal on Access to Discovery, 121 Yale L. J. 2270, 2291 (2012) (observing that '‘Twombly and Iqbal were accompanied by a substantively large increase in the rate at which defendants filed Rule 12(b)(6) MTDs"). I note that the Supreme Court tasked reviewing judges to draw on judicial experience (drumroll for that conjunctive word "and”) and common sense, so a newly appointed judge was to drink from what well? . As for that invitation, it was worded as follows: Defendants request that Plaintiffs take tire stops below ... If you refuse to do so, we will move to dismiss these claims and seek an appropriate award of fees and costs.” Defendants later used different but equally clear language in the letter when they explained that if plaintiffs did not “comply” and "execute these requests,” defendants would seek dismissal and Rule 11 fees. . And don’t forget, we did the same thing in Cavallaro v. UMass Mem'l Healthcare, Inc., when we remanded to allow plaintiffs “one last amendment.” 678 F.3d 1, 10 (1st Cir. 2012). . To that end, and for completeness, I append to. the dissent the entire transcript of this conference so the interested reader can take a look and make his or her own assessment of the exchange. . Liberality is so favored, in fact, that Rule 15(b) permits pleading amendment in some instances during and after trial. Fed. R. Civ. P. 15. And by the way, the policy behind this liberality stems from our preference to have disputes resolved on the merits. See, e.g., Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989) (citations omitted) (observing the important "philosophy that actions should ordinarily be resolved on their merits"); Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971) (emphasizing the strong "policy of the law favoring the disposition of cases on their merits”); see also Fed. R. Civ. P. 1 (instructing that the civil rules "should be construed ... to secure the just ... determination of every action and proceeding”). . See also Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014) (explaining that concern arises when additional discovery or re-opening discovery would be required due to the proposed amendment); Steir, 383 F.3d at 12-13 (taking issue with the proposed amendment because it came at "the penultimate phase of the litigation” and "would have required the reopening of discovery,” conducting a new deposition, seeking new records, postponing the summary-judgment hearing, "and almost certainly, the delay of any trial”); Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998) (approving denial of motion to amend because of undue delay and undue prejudice—"by the time of the motion for leave to amend, nearly all the case’s pretrial work was complete”); Grant v. News Grp. Boston, Inc., 55 F.3d 1, 5-6 (1st Cir. 1995) (agreeing that denial of motion to amend was appropriate when the motion came after discovery was complete, and the opposing party was almost done with its motion for summary judgment and "was well into its trial preparation”). . The majority provides a list of pleadings, motions, and exhibits dating back to October 2009 that the district court had reviewed in advance of the June 9, 2011 conference. I see this as beside the point—the routine work the district court had put in on this litigation prior to the conference is irrelevant as to the supposed burden and prejudice the majority says resulted from the two-month span of time (or the "delay”) between April and June of 2011. . In fact, the district court judge told the parties "I do want to stay discovery in the further briefing on the certification motions until I've sorted through the state of the pleadings here.” (Emphasis added.) From this, it is most reasonable to infer that the district court judge definitely had not done a deep dive on the motion for judgment on the pleadings. . The majority points to two cases in support of this exploitation point. I fail to see how these cases relate to or support exploitation of delay as a reason to deny a motion to amend, and regardless, these cases do not persuade on the delay piece. Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011), tackled a delay in moving to amend that related to information a plaintiff omitted from the complaint but was aware of before he even filed his complaint. Limiting itself to the "circumstances at hand,” and even though "the four month period between the filing of the complaint and the request to amend may not on its face seem particularly long,” this court concluded that no justification had been offered for that delay. M. This holding was confined to the specific facts of the case, and those facts are not the same as those presented. Moreover, as I have written already, plaintiffs did offer reasonable justification for waiting to move to amend. Next up, Kay v. New Hampshire Democratic Party, 821 F.2d 31 (1st Cir. 1987), cited by Villanueva, clearly explained that a motion to amend a complaint was properly denied “for the sole reason that such an amendment would have been futile.” Kay, 821 F.2d at 34. In dicta, and again limiting itself to the particular facts of that case, this court explained that the justification for the amended complaint did not account for the three-month delay (after new information came to light) in moving for amendment "in this case,” This dicta is unrelated to the circumstances of our case, it is not binding, and it is limited. And once again, I believe plaintiffs did offer valid reasons for waiting to move to amend.